Kevin Koe[1] *vs.* Gordon J. Mercer.

Suffolk. September 6, 2007. - November 21, 2007.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cordy, & Botsford, JJ.

*Child Abuse. Limitations, Statute of.*

Discussion of the discovery rule, which is used to determine when the three-year statute of limitations for tort actions, G. L. c. 260, § 2A, begins to run in circumstances where the plaintiff did not know or could not reasonably have known that he or she might have been harmed by the conduct of another. [100-101]

In a civil action alleging negligence on the part of the defendant in allowing a pastor of the plaintiff's church to sexually abuse the plaintiff when he was a minor, the judge properly granted summary judgment in favor of the defendant on the ground that the plaintiff had failed to file within the three-year statute of limitations period, G. L. c. 260, § 2A, where the record did not support a finding that the plaintiff actually lacked causal knowledge that he had been harmed, in that the plaintiff admitted that his psychiatrist had made the link between the sexual abuse and the plaintiff's emotional symptoms more than three years before the plaintiff filed his complaint [102-103]; moreover, even assuming that the plaintiff had a lack of knowledge, that lack of knowledge was not objectively reasonable, where the timing of the abuse and the plaintiff's age at the time did not work to impede his ability to connect his emotional problems with the abuse [103-104], the defendant's conduct did not operate to hinder the plaintiff's ability to connect the abuse with his psychological symptoms [104-105], and the abuse was a "watershed event" that could be considered when determining whether a reasonable person in the plaintiff's situation would have failed to realize his injuries were caused by the abuse [105]; further, a psychologist's affidavit was not framed in the proper legal context so as to create a genuine issue of material fact sufficient to defeat the motion for summary judgment, where the affidavit was not based on the benchmark reasonable person [105-106].

Civil action commenced in the Superior Court Department on February 28, 2002.

The case was heard by *D. Lloyd Macdonald*, J., on a motion for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

[1] A pseudonym.

A. *Neil Hartzell* (*Matthew M. O'Leary* with him) for the defendant.

*Carmen L. Durso* for the plaintiff.

IRELAND, J. The plaintiff filed a complaint on February 28, 2002, against the defendant, Gordon J. Mercer, alleging negligence in allowing a pastor of the plaintiff's church to sexually abuse him.[2] On February 15, 2005, a Superior Court judge granted the defendant's motion for summary judgment and dismissed the plaintiff's negligence claim because he failed to file within the three-year statute of limitations period. G. L. c. 260, § 2A. The plaintiff appealed. The Appeals Court vacated the order of summary judgment in favor of the defendant and remanded the case to the Superior Court for further proceedings. *Koe* v. *Mercer*, 67 Mass. App. Ct. 664, 672 (2007). We granted the defendant's application for further appellate review. Because we conclude that the plaintiff reasonably should have known by February 22, 1999, that there was a causal link between the alleged abuse and the emotional problems he suffered, we affirm the decision of the Superior Court that the plaintiff's claim is barred by G. L. c. 260, § 2A.

*Facts.* We recite the facts in the light most favorable to the plaintiff, reserving certain details for our discussion of the issues. The plaintiff was born on August 25, 1968. During his childhood, the plaintiff and his parents attended Parkway Christian Center, a church where Paul Braco, Sr., was the pastor.[3] The plaintiff claims that, in 1983, he was swimming at a church picnic when Braco sexually abused him by touching his genitals.[4] A couple of days after the incident, the plaintiff told his parents that Braco inappropriately touched him. Subsequently, the plaintiff's parents arranged a time to meet with Braco, but the defendant, who was an elder of the church and a member of the church's council, met with them instead. The defendant promised to speak with Braco; ultimately, the

---

[2]The initial complaint filed by the plaintiff also included a claim for breach of pastoral duty, but that claim is not before us.

[3]Braco died in 1996.

[4]Although the record is filled with contradictory statements about the plaintiff's age at the time of the incident, he was either fourteen or fifteen years old, as it is undisputed that the incident occurred in 1983.

defendant explained to the plaintiff's parents that the incident was inadvertent and a result of mere "horsing around."

After the picnic incident, the plaintiff continued to participate in church activities. He claims that, despite his efforts to avoid Braco, there were at least two other instances of abuse, and that in 1984 or 1985 he ran away from home because he "wasn't being heard," respected, or protected. For approximately one and one-half years, the plaintiff lived on the streets and engaged in stealing, dealing drugs, and drinking alcohol.[5] Ultimately, he was placed in the custody of the Department of Social Services, at which time he was able to obtain his GED.

In December, 1998, the plaintiff entered therapy to help him cope with his inability to focus and control his anger. A psychiatrist, Rafael Ornstein, met with the plaintiff on February 8, 1999. The medical record from this session states, in relevant part, that the plaintiff "wants help . . . with anger [and] anxiety . . . [and] [h]as had a history of sexual abuse by a pastor." Furthermore, the plaintiff stated in his deposition that by February 8, 1999, he knew that he had been sexually abused by Braco, that the abuse was wrong, and that, through the evaluation process with the psychiatrist, he was able to think about connections between what was happening in his life and the abuse.[6] In addition, the plaintiff stated that on February 22, 1999, Ornstein suggested that his depression and anger might be related to the sexual abuse he experienced as a child. However, the plaintiff quickly dropped the subject because he "didn't want to talk about it." The plaintiff continued his therapy, and on March 2, 1999, in a session with a social worker, the social worker claimed that the plaintiff was able to "identify [his rage] as feeling like a boy about the age of his sexual abuse." As the plaintiff continued to make connections during his therapy ses-

[5]The record is unclear as to the plaintiff's exact age when he ran away from home. He stated that he was approximately fourteen or fifteen. However, he also stated that he lived on the streets in 1984 through 1985, which would have made him sixteen or seventeen.

[6]In the plaintiff's deposition he stated that he was "able to remember and realize" because the psychiatrist would help draw connections by asking, "Well, have you ever thought about maybe the reason why is because of this, this and this."

sions he became uncomfortable and embarrassed; he ceased treatment after April, 1999.

On February 28, 2002, the plaintiff filed his complaint, and on July 8, 2004, Allen J. Brown, a psychologist, examined him. Brown, who submitted an affidavit in support of the plaintiff's opposition to the defendant's motion for summary judgment, diagnosed the plaintiff with post traumatic stress disorder due to the sexual abuse. Furthermore, Brown stated that the plaintiff's failure to make the connection between Braco's abuse and his emotional problems prior to late 1999 or early 2000 was reasonable, as such a failure was not uncommon in situations where abuse occurred over a long period of time and the child's parents were unsupportive.

*Standard of review.* "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991), citing Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974).

*Statute of limitations.* The plaintiff's claim for negligence is governed by G. L. c. 260, § 2A, which provides a three-year period of limitations for, inter alia, tort actions.[7,8] The three-year limitations period "commences . . . after the cause of ac-

---

[7]General Laws c. 260, § 7, tolls the running of the limitations period until a minor reaches the age of majority.

[8]The Appeals Court's decision applied the three-year limitations period contained in G. L. c. 260, § 4C, to this case. See *Koe* v. *Mercer*, 67 Mass. App. Ct. 664, 666 (2006). General Laws c. 260, § 4C, applies to claims against perpetrators of assault and battery by sexual abuse on a minor. Here, the case involved a tort claim against the defendant, who was not a perpetrator of the abuse; therefore, the general tort statute of limitations, G. L. c. 260, 2A, is the applicable standard. However, in this case the distinction between G. L. c. 260, § 2A, and G. L. c. 260, § 4C, makes no real difference, because both provisions ultimately apply the discovery rule to a three-year limitations period.

The Appeals Court's analysis, *id.* at 668, relied on *Doe* v. *Harbor Schs., Inc.*, 446 Mass 245 (2006), and applied the actual knowledge standard, which is applicable for claims involving breach of fiduciary duty, rather than the discovery rule, which hinges on when "a plaintiff discovers, or reasonably should have discovered, that [he was] harmed . . . by the defendant's conduct." *Phinney* v. *Morgan*, 39 Mass. App. Ct. 202, 204 (1995).

tion accrues." G. L. c. 260, § 2A. The statute does not define the term "accrues." However, the general rule for tort actions is that an action accrues when the plaintiff is injured. *Joseph A. Fortin Constr., Inc.* v. *Massachusetts Hous. Fin. Agency*, 392 Mass. 440, 442 (1984). *Cannon* v. *Sears, Roebuck & Co.*, 374 Mass. 739, 741 (1978). This court has developed a discovery rule to determine when the statute of limitations begins to run in circumstances where the plaintiff did not know or could not reasonably have known that he or she may have been harmed by the conduct of another. *Bowen* v. *Eli Lilly & Co.*, 408 Mass. 204, 205 (1990).

Under this discovery rule, the statute of limitations starts when the plaintiff discovers, or reasonably should have discovered, "that [he] has been harmed or may have been harmed by the defendant's conduct." *Id.* at 205-206. Therefore, the three-year statute of limitations period of § 2A does not start to run "until a plaintiff has first, an awareness of [his] injuries and, second, an awareness that the defendant caused [his] injuries." *Doe* v. *Creighton*, 439 Mass. 281, 283 (2003).[9] The plaintiff admits that he began experiencing emotional problems in 1998. Therefore, his statute of limitations argument is based on the second prong: he claims that he did not become aware of the connection between the sexual abuse and his emotional problems until late 1999 or early 2000.

Once a plaintiff relies upon the discovery rule to argue that his claim was delayed due to an inability to recognize the cause of his injuries, he bears the burden of "proving both an actual lack of causal knowledge and the objective reasonableness of that lack of knowledge." *Id.* Generally, an issue concerning what the plaintiff knew or should have known is a factual question that is appropriate for the trier of fact. *Riley* v. *Presnell*, 409 Mass. 239, 240 (1991). However, in order for a plaintiff's claim to survive a summary judgment motion, he must demonstrate a reasonable expectation of proving that the claim was timely filed. *Doe* v. *Creighton*, *supra* at 284. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). In the present case, the plaintiff has failed to make this showing.

---

[9]See *Phinney* v. *Morgan*, 39 Mass. App. Ct. 202, 204 (1995) (applying discovery rule to G. L. c. 260, § 2A, where tort action was brought against someone other than perpetrator of abuse).

1. *Actual lack of causal knowledge.* The record does not provide sufficient support for a finding that the plaintiff actually lacked causal knowledge. The plaintiff filed his complaint on February 28, 2002. It is undisputed that by February 22, 1999, the psychiatrist had made the connection, the link between the sexual abuse and his emotional symptoms, for him. In the plaintiff's response to the defendant's statements of undisputed facts and during the plaintiff's deposition testimony, he acknowledged that his psychiatrist had suggested that there was a connection between his symptoms and the abuse. However, the plaintiff denies *understanding* the connection until March, 1999. We appreciate that a history of sexual abuse is painful and may be difficult to come to terms with. However, the discovery rule does not grant plaintiffs the option of ignoring connections once they have been made aware of them. In fact, one does not have to fully comprehend the full extent or nature of an injury in order for a cause of action to accrue. *Olsen* v. *Bell Tel. Lab., Inc.*, 388 Mass 171, 175 (1983) (rejecting argument that knowledge of extent of injury is necessary for accrual to occur). Instead, the statute of limitations begins to run when a plaintiff has "knowledge or sufficient notice that [he] was harmed and . . . knowledge or sufficient notice of what the cause of the harm was." *Bowen* v. *Eli Lilly & Co., supra* at 208. In the *Bowen* case, the plaintiff had been exposed to the drug diethylstilbestrol (DES) in utero and subsequently was diagnosed with vaginal cancer. *Id.* at 205. The plaintiff there had read a letter sent by a physician that suggested there was an association between DES and vaginal tumors as well as articles on the matter but failed timely to file her claim. *Id.* at 209. The court stated that "[r]easonable notice that a particular product or a particular act of another person may have been a cause of harm to a plaintiff creates a duty of inquiry and starts the running of the statute of limitations." *Id.* at 210.

Like the plaintiff in the *Bowen* case, the plaintiff here failed timely to act on his causal knowledge. Once the psychiatrist drew the connection between the plaintiff's emotional problems and his history of sexual abuse on February 22, 1999, the plaintiff had reasonable notice that the defendant may have been the cause of his harm and, consequently, a duty to act or at least

inquire further. Therefore, the plaintiff's complaint was not filed within the three-year statute of limitations period set out in G. L. c. 260, § 2A. However, even assuming that the plaintiff had an actual lack of knowledge, he cannot satisfy the second prong of the discovery rule because his lack of causal knowledge was not objectively reasonable.

2. *Objective reasonableness of lack of actual knowledge.* The standard for evaluating whether a plaintiff's lack of knowledge is objectively reasonable is that of "a reasonable person who has been subjected to the conduct which forms the basis for the plaintiff's complaint." *Riley* v. *Presnell, supra* at 245. Personal character traits, educational history, and cultural backgrounds are usually immaterial in determining whether a lack of knowledge is objectively reasonable. *Doe* v. *Creighton, supra* at 284. In the *Doe* case, we noted that factors such as the timing of the abuse, a perpetrator's attempts to disguise it, and whether the abuse was a "watershed event" can be considered when determining whether a reasonable person in the plaintiff's situation would fail to realize his injuries were caused by the defendant's conduct. *Id.* at 285. We consider each, in turn.

a. The plaintiff argues that his inability to connect his emotional problems with Braco's abuse was objectively reasonable because the abuse occurred when the plaintiff was a child. We recognize that a person who is abused at an early age over a prolonged period of time might have difficulty later in life linking the psychological problems with the abuse. *Doe* v. *Creighton, supra* at 285. In the *Doe* case, a sixteen year old girl was abused by a priest for a year. The court determined that the "defendant's conduct and its consequent effects would hardly be a distant memory when the plaintiff reached her eighteenth birthday." *Id.* Therefore, timing did not play a large role in concealing the causal relationship. Here, the plaintiff was fourteen or fifteen when the abuse began. He testified that shortly after the first incident, he knew Braco's conduct was wrong, informed his parents, and even thought about killing Braco. Furthermore, the alleged abuse was truncated rather than prolonged because the plaintiff ran away from home following it, feeling abandoned by his parents. Given the plaintiff's thoughts and conduct, he

was mature enough to recognize the nature of the abuse.[10] Therefore, the record does not support the plaintiff's claim that the timing of the abuse and his age worked to impede his ability to connect his emotional problems with the abuse.

b. The plaintiff also argues that the defendant attempted to disguise the abuse, which made it difficult for the plaintiff to make the connection between the abuse and his symptoms. Evidence of cloaking or attempts to disguise abuse can impede the plaintiff's ability to recognize that he has been harmed by the abuse. *Doe* v. *Creighton, supra* at 285. However, unlike in the *Doe* case, where the defendant was the abuser, in this case the defendant was not a perpetrator. Here, there is nothing in the record to indicate that cloaking by Braco was an issue; rather, the plaintiff asserts that it was the defendant's custom to persuade children and families that sexual abuse was "horseplay." The defendant's testimony about this is contradictory. Despite these inconsistent statements, the defendant's conduct did not operate to hinder the plaintiff from recognizing that he had been harmed by Braco, because by February 22, 1999, the psychiatrist had made the connection for him.[11]

Furthermore, the plaintiff argues that the defendant would "customarily request that families not discuss incidents of sexual abuse." However, the record indicates that the defendant asked

---

[10]The facts in *Ross* v. *Garabedian,* 433 Mass. 360 (2001), on which the plaintiff relies, are different from the facts presented in this case. In that case, summary judgment was denied where the plaintiff, a thirteen year old boy, was aware that a sexual relationship with a twenty-seven year old man was "wrong." *Id.* at 361-362. The court stated that the fact that the "plaintiff knew his conduct was shameful and wrong [did] not 'provide him with the modicum of knowledge required to trigger the statute of limitation[s],' " because a fact finder might find that his feelings of shame stemmed from the fact that his sexual conduct was contrary to his family or religious morals rather than due to any recognition on his part of a "legally recognizable 'harm.' " *Id.* at 366, quoting *Phinney* v. *Morgan,* 39 Mass. App. Ct. 202, 209 (1995). Unlike the *Ross* case, in this case the plaintiff acknowledged that on February 22, 1999, the psychiatrist helped him make the connection between his psychological problems and the abuse he experienced as a child.

[11]While the plaintiff's parents were discussing Braco's actions with the defendant, Braco entered the room and stated, "sometimes I [act] more like a kid than the kids do . . . . This is all just a misunderstanding." The plaintiff was not present during this conversation, so Braco's presence did not directly affect the plaintiff's ability to make the connection between the abuse and his emotional problems.

the plaintiff's parents to keep quiet *until* they had met with Braco. The defendant merely requested that the plaintiff's parents remain silent about the alleged abuse until he discussed the issue with Braco, not remain silent forever. Therefore, cloaking did not operate to hinder the plaintiff's ability to connect the abuse with his psychological symptoms.[12]

c. The plaintiff argues that it is objectively reasonable for him to fail to appreciate the connection between the abuse and his symptoms because of the length of time between his symptoms and the abuse: the first instance of abuse occurred in 1983 and the emotional distress began in 1998. Although the plaintiff now argues that because the symptoms did not immediately follow the abuse, his "leaving home was not a watershed response to the sexual abuse," the record indicates otherwise.[13] Prior to the alleged abuse the plaintiff was a good student, but after he ran away from home he dropped out of school, engaged in drug dealing, consumed alcohol, and stole. The plaintiff admits that the reason he ran away from home was because he felt that he was not being heard, respected, or protected, and admitted in his interrogatories that "I have not had a normal life since I ran away from home in response to the sexual abuse . . . ."[14]

*Expert's affidavit.* One method by which a plaintiff can prove the objective reasonableness of his or her lack of causal knowledge is through affidavits or testimony from competent

[12]The plaintiff also argues that the defendant's actions confused the plaintiff as to the difference between right and wrong. However, even when the defendant questioned the plaintiff in the presence of his parents, the plaintiff "was very firm" that the touching was not accidental. Moreover, even if the plaintiff was confused as to right and wrong at that time, he later admitted that he knew it was wrong by February 8, 1999.

[13]The plaintiff also now claims that he "had no memory of the sexual abuse by Braco . . . . The memory of the abuse and its connection to his psychological distress did not arise until late 1999 or early 2000." However, the plaintiff acknowledged in his deposition that by February 8, 1999, he knew that he had been sexually abused by Braco.

[14]In addition, the plaintiff argues that the judge engaged in fact finding when he determined that the nature of the abuse was such that an objectively reasonable person should have recognized the causal connection between the abuse and his injuries. This has no merit. However, even assuming that the judge engaged in fact finding, we have not relied on those "findings" in reaching our conclusion.

experts. *Riley* v. *Presnell*, 409 Mass. 239, 247 (1991). However, the expert's report only illuminates the objective reasonableness of the plaintiff's lack of causal knowledge if the report is based on the "hypothetical member of the general population required by the law." *Doe* v. *Creighton*, 439 Mass. 281, 286 (2003). The plaintiff argues that his psychologist's affidavit is "framed in the proper legal context, that of the objectively reasonable person, and . . . creat[es] a genuine issue of material fact."[15] However, the affidavit focuses on *the plaintiff's* ability to make the connection rather than the "benchmark reasonable person" subject to the conduct that forms the grounds for the complaint.[16] Moreover, the affidavit fails to address whether it is objectively reasonable for the "benchmark reasonable person" to fail to make the connection between the abuse and the psychological problems once a doctor has made the connection for him or her. *Doe* v. *Creighton, supra* at 286. Because the affidavit relied on by the plaintiff was not based on the "benchmark reasonable person," it fails to shed any light on the objective reasonableness of the plaintiff's lack of casual knowledge and consequently fails to create a genuine issue of material fact.

*Conclusion.* We sympathize with the victims of abuse. However, "the United States Supreme Court has long recognized . . . [that statutes of limitations are] 'vital to the welfare of society . . . . They promote repose by giving security and stability to human affairs.' " *Franklin* v. *Albert*, 381 Mass. 611, 618 (1980), quoting *Wood* v. *Carpenter*, 101 U.S. 135, 139 (1879).

*Judgment affirmed.*

---

[15]Given our conclusion, we need not address the defendant's motion to strike various affidavits, including the psychologist's.

[16]For example, the psychologist states "it is my opinion . . . that [the plaintiff's] explanation of the manner in which he made the connection . . . is both internally consistent and in conformity with accepted principles of psychology."