Leibensperger, Edward P., J.
INTRODUCTION
Plaintiff, Stewart Title Insurance Company, brings this action to recover damages associated with allegedly erroneous title services provided by the defendants, Robert E. Kelley and his law firm, RKelley-Law, P.C. (together, referred to as “Kelley Law”). Kelley Law asserts a counterclaim for breach of contract and seven tort-based causes of action based on Stewart’s alleged conduct with respect to establishing a relationship with two former Kelley Law employees. Stewart moves to dismiss the tort-based counts of the counterclaim, arguing that the claims are time barred. For the following reasons, Stewart’s Motion to Dismiss is DENIED and the defendants’ Motion to Amend the Counterclaim is ALLOWED.[2]
BACKGROUND
I. Stewart’s Claims
Stewart commences this action against Kelley Law based on alleged breaches of an Agency Agreement. The Agency Agreement was between Stewart and Kelley. Stewart claims that RKelley-Law, P.C. became the principal for Kelley’s operation under the agreement. Stewart claims the right to indemnification from defendants and also asserts claims of negligence. Under the Agency Agreement, Kelley Law was Stewart’s limited agent for the purpose of issuing title insurance policies in connection with real estate closings. Stewart terminated the limited agency agreement on Januaiy 26, 2007, because of Kelley Law’s purported poor performance.
The Agency Agreement provides in paragraph 6, “LOSSES AND DEFENSE OF ACTIONS," that Kelley is responsible for indemnifying Stewart for losses and attorneys fees associated with claims made on policies on which Kelley Law worked.[3] Stewart now seeks recovery in connection with errors in title searches related to five policies that Kelley Law produced as Stewart’s title insurance agent.
II. Kelley Law’s Counterclaims
Kelley Law asserts eight claims against Stewart in its initial counterclaim: (1) malicious interference with agency agreement: (2) malicious interference with advantageous relationships of at-will employees of Kelley Law; (3) breach of contract; (4) negligence; (5) deceit-fraudulent concealment; (6) intentional/reckless infliction of emotional distress upon Kelley; (7) conspiracy; and (8) G.L.c. 93A, §11 violations.
The counterclaim is based on the following factual allegations, taken as true for the purposes of resolving Stewart’s motion to dismiss. Under the Agency Agreement, Kelley Law was responsible for conducting title examinations on properties for which Stewart would potentially provide title insurance. The tasks included transposing onto a title insurance binder the encumbrances on a property that could cause a person to claim superior title. Kelley Law trained its staff to *79 perform the tasks in conformance with the Agency Agreement.
Kelley Law alleges that Stewart was aware that the pace of real estate closings at Kelley Law had greatly accelerated between Februaiy 2005 and August 2005. Kelley Law was conducting approximately 100 closings per month, relying on eleven paralegals, one associate attorney and the firm’s principal, Kelley. This increase in volume made Stewart aware that Kelley Law’s staff had an increased risk of losing capacity to perform under the contract and that Kelley Law would not be able to maintain its obligation to train and educate Kelley Law’s employees as required by the Agency Agreement.
Stewart was allegedly aware that Kelley Law’s associate, Louis Bertucci, and its chief paralegal, Carolyn Morin, were necessaiy and integral to managing the files related to Stewart’s title insurance binders. Kelley Law had expended resources, time, and effort to train Bertucci and Morin for four and ten years, respectively. Thus, Stewart should have recognized that Bertucci and Morin could not be replaced without a careful selection and training process and that their sudden departure would “ ‘devastate’ the firm’s ability to perform its agency duties to Stewart. . .”
Kelley Law alleges that in the spring of 2005, between late May and early June, Bertucci and Morin approached Stewart, through its agent Ester Grady, about the possibility of becoming an independent title insurance agent for Stewart. Grady and another Stewart agent, Tom Flynn, agreed to assist Bertucci and Morin in opening an independent office as a Stewart agent. Grady, Flynn, Bertucci, and Morin agreed to keep their intentions a secret from Kelley Law.
Kelley Law discovered through this litigation that Bertucci submitted and completed his application to become an independent agent of Stewart in June 2005. He listed both Kelley Law and Kelley as his professional references and disclosed that he was still working at Kelley Law. Bertucci’s application was transmitted to Stewart’s principal corporate office. Stewart was aware or should have been aware that Bertucci, the applicant for an independent agency agreement, was employed by another Stewart independent agent (Kelley Law).
Kelley Law asserts that Stewart had a duty to inform Kelley Law if Stewart had knowledge that a Kelley Law employee was seeking to be a Stewart independent agent. It contends that the Agency Agreement obligated Stewart to refrain from facilitating the independent agency of a Kelley Law employee because doing so would impair Kelley Law’s ability to perform under the Agency Agreement.
On June 5 or 6, 2005, Bertucci and Morin gave notice of their intent to resign and open the Law Offices of Louis Bertucci. Stewart did not provide notice to Kelley Law or Kelley of Bertucci’s intent to become a Stewart independent agent. Allegedly, Stewart departed from its custom and practice of reaching out to current employers of an applicant, such as Bertucci, when considering him for an independent agency agreement.
DISCUSSION
Stewart moves to dismiss only Kelley Law’s tort-based counterclaims based solely on the expiration of the statute of limitations. To survive a motion to dismiss, the claimant’s “[f]actual allegations must be enough to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . .” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), citing Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007). In other words, “[w]hile a complaint attacked by a . . . motion to dismiss does not need detailed factual allegations ... a plaintiffs obligation to provide the ‘grounds’ of his ‘entitle [ment] to relief requires more than labels and conclusions ...” Iannacchino, 451 Mass. at 636, quoting Bell Atl. Corp., 127 S.Ct. at 1966.
I. Applicable Statute of Limitations
Here, Kelley Law’s six tort-based counterclaims are subject to a three-year limitations period. G.L.c. 260, §2A (“Except as otherwise provided, actions of tort... shall be commenced within three years next after the cause of action accrues”).[4] Kelley Law also asserts a G.L.c. 93A claim, as to which a four-year limitations period applies. See G.L.c. 260, §5A (“Actions arising on account of violations of any law intended for the protection of consumers, including . . . chapter ninety-three A . . . shall be commenced only within four years next after cause of action accrues”).
General Laws c. 260, §36 provides that while the above-stated statutory limitations periods apply to counterclaims, the limitations period for counterclaims are computed from the time when the plaintiff commences the action. Id. If a counterclaim is properly characterized as “arising out of the same transaction or occurrence that is the subject matter of the plaintiffs claim,” it may be asserted “to the extent of the plaintiffs claim,” even if the claims would be barred by the applicable limitations period. Id.
Stewart filed this action on September 6, 2011. Stewart argues that the events upon which defendants base their counterclaims occurred, at the latest, in July 2005, when Kelley Law’s associate and chief paralegal unexpectedly departed from the firm. Accordingly, Stewart contends that defendants were required to have filed their tort claims by July 2008, and their consumer protection claim by July 2009.
Kelley Law, however, argues that it was not aware and could not reasonably have been aware that it had been injured by Stewart’s conduct until after commencement of this litigation. Kelley Law argues that the applicable statutes of limitations were tolled by the *80 discovery rule or Stewart’s fraudulent concealment of facts, and that the counterclaims are timely asserted. Alternatively, Kelley Law argues that its counterclaims are compulsory counterclaims and, thus, may be asserted at least as to the extent of Stewart’s claims against them.
II. Tolling of the Limitations Period
The party against whom a claim is made (here, Stewart) bears the initial burden of raising the statute of limitations as an affirmative defense and showing that the injury occurred outside the limitations period. The burden then shifts to the claimant to demonstrate facts that excuse the delay in filing the action. O’Connor v. Redstone, 452 Mass. 537, 551 (2008); Riley v. Presnell, 409 Mass. 239, 243-44 (1991). Stewart properly raises the statute of limitations in its motion to dismiss and demonstrates from the face of the counterclaim that Kelley Law’s injury occurred in June or July of 2005. Kelley Law, however, pleads that defendants lacked actual knowledge of, and had no reason to inquire further about, Stewart’s involvement with Bertucci’s and Morin’s departure. For purposes of this motion, defendants’ statements in their counterclaim must be taken as true.
A cause of action does not accrue under the statute of limitations until the claimant learns, or reasonably should have learned, that he has suffered harm as a result of the defendant’s conduct. This is known as the discovery rule. Bowen v. Eli Lilly & Co., 408 Mass. 204, 205-06 (1990). A claimant who relies on the discovery rule to argue that he was incapable of recognizing the cause of his injuries bears the burden of “proving both an actual lack of causal knowledge and the objective reasonableness of that lack of knowledge.” Koe v. Mercer, 450 Mass. 97, 101 (2007). Whether the claimant satisfies this burden is ordinarily a question of fact for the jury. Id., citing Riley, 409 Mass. at 240.
Our courts have cautioned, however, that “(t]he discovery rule is not an endless protected time zone against the deadlines of a statute of limitations.” Frankston v. Denniston, 74 Mass.App.Ct. 366, 373 (2009) (relating sufficient causal knowledge to warnings of an impending storm, such as gathering and darkening clouds). “The controlling question is whether a plaintiffs knowledge, actual or attributed, of both harm to it and the likely cause of such harm, was sufficient to stimulate further inquiry which was likely to alert it to a cause of action against a defendant.” Hanson Hous. Auth. v. Dryvit Sys., Inc., 29 Mass.App.Ct. 440, 446 (1990). See also McGuinness v. Cotter, 412 Mass. 617, 620 (1992) (court analyzes the question “based on the information available to the plaintiff’).[5]
From the counterclaim, Kelley Law apparently had only limited knowledge regarding the reasons for Bertucci’s and Morin’s departure in June or July 2005. Kelley Law acknowledges only that Bertucci and Morin provided it with general notice of their intent to resign and open a law firm run by Bertucci in Quincy, Massachusetts. Kelley Law claims that it had no information regarding Stewart’s alleged involvement in the departures. Kelley Law had no indication from Stewart that its limited agency relationship would in any way be affected by Bertucci’s and Morin’s departure. In fact, Stewart did not terminate the Agency Agreement with Kelley Law until sometime in 2007. Considering these allegations as true, defendants have satisfied their burden of showing at the motion to dismiss stage that they lacked actual knowledge of, or sufficient reason to inquire about, Stewart’s alleged conduct to engage Bertucci to an agency agreement to the harm of Kelley Law. It may be that upon further development of facts through discovery, the discovery rule might be shown not to apply or to start the statute of limitations clock at a date much earlier than the date of filing this action, but on the record at the motion to dismiss stage, the counterclaims survive the motion to dismiss.
III. Relationship of the Counterclaims to Stewart’s Claims
Kelley Law argues, in the alternative to its tolling assertion, that it may maintain the counterclaims to the extent of Stewart’s claim under the provisions of G.L.c. 260, §36. If the counterclaims arise out of the same transaction or occurrence that is the subject matter of the plaintiffs claim, the counterclaims survive to the extent of the plainitffs claim. Mass.R.Civ.P. 13 provides further guidance regarding compulsory counterclaims, stating that “[a] pleading shall state as a counterclaim any claim for relief the court has power to give which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party’s claim . . .” Rule 13(a) mandates that parties bring all related claims in the same action, and a failure to raise a compulsory counterclaim bars a party from later maintaining a separate action. See Keystone Freight Corp. v. Bartlett, 77 Mass.App.Ct. 304, 309-10 (2009), citation omitted.
A compulsory counterclaim “need not rest on precisely identical facts or pose identical allegations.” Id. at 310, citations omitted. The inquiry rests on whether the controversies at issue arise out' of a common subject area and are “so closely connected as appropriately to be combined in one trial in order to prevent duplication of testimony, to avoid unnecessary expense to the parties and to the public, and to expedite the adjudication of suits.” Id., citations omitted. In essence, the question is whether a “logical relationship” exists between the plaintiffs case and the defendant’s counterclaims. Id.
Here, Kelley Law’s tort-based counterclaims arise out of the same transaction or occurrence that is the subject matter of Stewart’s claims. The subject matter of Stewart’s claims is the relationship under the Agency Agreement, including both parties’ duties and *81 obligations. Kelley Law’s counterclaims arise from alleged duties Kelley Law claims were created by the Agency Agreement and the surrounding relationship. Moreover, Stewart’s negligence claim potentially raises issues concerning the course of events and conduct surrounding Bertucci’s and Morin’s departure. Thus, Kelley Law’s counterclaims are connected to Stewart’s pending claims in such a way as to make it logical and efficient that they be resolved in one trial. Kelley Law’s counterclaims are compulsory and, therefore, may be asserted pursuant to G.L.c. 260, §36.
ORDER
For the reasons stated above, Stewart’s motion to dismiss is DENIED and the defendants’ motion to amend the counterclaim is ALLOWED.

 Kelley Law’s First Amended Counterclaim replaces statements purported to be based on “information and belief’ in the initial counterclaim with statements based on evidence gathered during the discovery process. The factual allegations of the First Amended Counterclaim appear substantially the same as those in the initial counterclaim, except that defendants are no longer pursuing the conspiracy claim (Count VII). Based on the result reached on plaintiffs motion to dismiss, the amendment is not futile and will be allowed.

 The language at issue is as follows: “On each loss suffered by STEWART by reason of its Insured Closing Letter on behalf of ATTORNEY, ATTORNEY shall be liable to STEWART for the entire amount of such loss, including but not limited to attorney fees, litigation expenses, and cost of settlement negotiations.”

 See Stark v. Advanced Magnetics, Inc., 50 Mass.App.Ct. 226, 232 (2000) (stating G.L.c. 260, §2A applicable to tortious interference with contractual or advantageous relations).

 ‘The discovery rule does not require that a plaintiff know the specific details pertaining to an alleged harm, but instead it imposes a ‘duty to investigate’ on a plaintiff who has cause for concern . . . Critically, knowledge of ‘every fact necessary to prevail on the claim’ is not required to put the plaintiff on inquiry notice and trigger the accrual period." Epstein v. CR Bard, Inc., 460 F.3d 183, 188 (1st. Cir. 2006) (citations omitted).