Curran, Dennis J., J.
David G. Player filed suit against the town of Framingham alleging that the town failed to properly maintain an office building it owned and as a result, he was exposed to and sustained injuries from toxic mold present in the building while he was a tenant. This matter is now before the court on Framingham’s motion for summary judgment under Mass.R.Civ.P. 56(c).
For the following reasons, Framingham’s motion is DENIED.
BACKGROUND
The following facts are taken from the summary judgment record and statement of undisputed material facts filed jointly by the parties under Superior Court Rule 9A(b)(5). These facts are recited in the light most favorable to the plaintiff (Mr. Player), the non-moving party. Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1987). The court reserves further facts for legal analysis.
From 1995 to December 2008, Mr. Player leased office space in a building that was owned by the town. This building, commonly referred to as the Maynard Building, is located at 14 Vernon Street. For the first year, Mr. Player leased space on the first floor. He then moved to the second floor and in 1999, relocated to suite 307 on the third floor where he remained until 2008.
While a tenant, Mr. Player detected a musty odor and noticed several water leaks as well as wet and brown-stained ceiling tiles and stained and smelly carpets within the building. He pointed these issues out to the maintenance staff. However, apart from general custodial duties, and periodically replacing stained ceiling tiles and patching holes within the roof, the town did little to maintain the building. In 2008, the town relocated the school department to the third floor. Consequently, Mr. Player lost his lease and was required to leave the building.
Throughout his tenancy, Mr. Player experienced coughing and wheezing while he worked. When he moved to the third floor, he began to face additional health problems including cognitive deficits, headaches, heart palpitations, “brain fog,” fatigue, energy loss, weakness, dizziness, tremors, daily nose bleeds, sore throat, chest and sinus congestion, itchy skin, athralgia, joint pain, light sensitivily, and mood issues. These issues would abate some when he left the building for the day. During the last two years of his tenancy, his symptoms worsened, and in 2008-2009, Mr. Player was diagnosed with bladder tumors.
On May 5, 2010, Mr. Player read an article in the MetroWest Daily News which stated that mold had been discovered in the Maynard Building. Upon reading this information, it occurred to him that the health issues he continued to face might be associated with exposure to the mold during his tenancy there.[1] He then started to look for a mold specialist in Massachusetts to consult about mold-related illnesses. Ultimately, he found W. Alex Bingham, M.D. and met with him on June 16, 2011. Dr. Bingham determined that Mr. Player likely suffered from mold toxicity and Chronic Inflammatory Response Syndrome. Dr. Bingham later performed lab tests that confirmed this diagnosis.
On December 29, 2011, in accordance with G.L.c. 258, §4, Mr. Player sent a Notice of Claim letter to the town and, on May 3, 2013, filed this action.
DISCUSSION
Summary Judgment shall be granted where there is no genuine dispute of material fact and the moving *198 party is entitled to judgment as a matter of law. Mass.RCiv.P. 56(c); Brigade Leveraged Capital Structures Fund Ltd. v. Pimco Income Strategy Fund, 466 Mass. 368, 373 (2013). To meet its burden of proof, the moving party must support its motion with at least one of the materials listed in Rule 56(c). Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714 (1991), citing Celotex Corp. v. Catrett, 477 U.S. 317, 328 (1986) (White, J., concurring). “[Although that supporting material need not negate, that is, disprove, an essential element of the claim of the party on whom the burden of proof at trial will rest, it will demonstrate that proof of that element at trial is unlikely to be forthcoming.” Id.
Once the moving party meets its burden, the non-moving party must provide specific facts to show that there is a genuine issue for trial. Id. at 716. Unsupported contradictions of factual allegations are insufficient to raise questions of material fact sufficient to defeat a summary judgment motion. Madsen v. Erwin, 395 Mass. 715, 719 (1985).
The court may consider pleadings, depositions, answers to interrogatories, admissions on file, and affidavits when making its decision. Cataldo Ambulance Serv. v. Chelsea, 426 Mass. 383, 388 (1998). However, it does not weigh the evidence, determine witness credibility, or make its own findings of fact. Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1987).
The Discovery Rule
Mr. Player brought his claims against the town under the Massachusetts Tort Claims Act. G.L.c. 258. Thus, he was required to file suit within three years after the cause of action accrued. G.L.c. 258, §4. Generally, in a case involving a tort, an action accrues when the plaintiff is injured. Koe v. Mercer, 450 Mass. 97, 101 (2007). However, in circumstances where the plaintiff did not know or could not have reasonably known that he may have been harmed by another’s conduct, the courts employ the discovery rule. Id. Under the discovery rule, “a cause of action accrues when ‘an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused [him] injury.’ ” Doherty v. Admiral’s Flagship Condominium Trust, 80 Mass.App.Ct. 104, 108 (2011), quoting Bowen v. Eli Lilly & Co., 408 Mass. 204, 205 (1990). In other words, the statute of limitations begins to run when: 1) the plaintiff knows or has sufficient notice of the harm; and 2) knows or has sufficient notice of the cause of the harm. Bowen, 408 Mass. at 208.
Once a plaintiff invokes the discovery rule, he must show both actual lack of causal knowledge and that this lack of knowledge was objectively reasonable under the circumstances. Koe, 450 Mass. at 101. This is a factual issue appropriate for resolution by the jury. Riley v. Presnell, 409 Mass. 239, 240 (1991). However, in order to withstand summary judgment, the plaintiff must establish “a reasonable expectation of proving that the claim was timely filed.” Koe, 450 Mass. at 101, citing Doe v. Creighton, 439 Mass. 281, 284 (2003). Mr. Player has done so here.
Mr. Player contends that although he was aware of his injuries while still a tenant in the Maynard building, he was not aware that toxic mold in the building caused these injuries until he read the newspaper article on May 5, 2010 which informed him that mold was present at the building. The town disputes that Mr. Player made the connection between the mold and his health conditions at this point and instead, insists that he realized there was a possible link a few weeks earlier when he spoke with the woman at Staples who told him that she had heard that the building was loaded with mold. Thus, the town alleges that Mr. Player failed to file his claim within the applicable time period because his claim actually began to accrue weeks before May 5, 2010. Therefore, it contends that his claim is time-barred.
The town, however, inflates Mr. Player’s deposition testimony in order to come to this conclusion. At his deposition, Mr. Player stated that after he chatted with the woman at Staples, he “started to wonder if perhaps the mold might have had some impact upon [his] health.” Joint Appendix, Exh. B, p. 148. The town equates this statement to mean that after having a casual conversation with an acquaintance, he made a definitive connection between the mold in the building and his health complications. The court, however, respectfully disagrees with the town’s interpretation of this statement. The term “wonder”[2] hardly rises to the level of knowledge, especially here where his source of information was a casual acquaintance who had also worked in the building. Instead, after speaking with this woman, it is reasonable to infer that Mr. Player merely had a passing image about the impact of possible mold on his health. A passing image does not rise to the level of knowledge.
Mr. Player has met his burden of showing that he has a reasonable expectation of proving that his claim was timely filed. He has, at the very least, established a genuine issue of fact about when he actually made a connection between his illnesses and the mold. There is also sufficient evidence in the record to create a dispute over whether his lack of knowledge was objectively reasonable. See Riley, 409 Mass. at 246 (to determine reasonableness must look at when “the ordinary reasonable person who had been subject to the experience would have discovered that the injury was caused by that experience”). The town argues that no reasonable person would have failed to understand that the conditions of the building caused the illnesses from which he suffered. The town points first to the conditions of building as support for its contention. However, the mere fact that the building was musty and had signs of water damage is not sufficient as a matter of law to put an individual on notice of the presence of toxic mold. See, e.g., Doherty, 80 *199 Mass.App.Ct. at 109. Secondly, the town points to the fact that Mr. Player experienced his symptoms only while in the building and how these symptoms quickly abated upon leaving the premises. However, the extent and when he suffered his symptoms is disputed within the record. Finally, the town highlights the fact that three other people, including his secretary, suffered from the same type of symptoms while in the building. This issue is also disputed in the record. The parties also disagree over when Mr. Player actually became aware of the fact that other individuals were allegedly suffering from similar symptoms. Thus, these are all issues for the jury to determine after examining the credible evidence.
Mr. Player has established a reasonable expectation of proving that his claim was timely filed; summary judgment is inappropriate.
The Existence of Mold
The town further argues that Mr. Player has failed to provide evidence showing that toxic mold existed within the building during his tenancy. It contends that the only conclusive evidence of mold existing within the building comes from an air quality study conducted on March 11, 2010. According to the town, without an expert, Mr. Player cannot show that this mold was present within the building fifteen months earlier while Mr. Player was still a tenant.
However, Mr. Player has submitted sufficient evidence to suggest that there was mold present within the building while he was a tenant. While the study that verifies the existence of mold was not conducted until 2010, two years after Mr. Player had vacated the premises, a jury could reasonably conclude that the mold found in this study existed while Mr. Player occupied an office there considering the condition of the building during that time. Further, the study noted that several types of the mold discovered within the building were indicative of long-term water damage. Contrary to the town’s assertion, the jury would not need to hear evidence from an expert concerning the life cycles of mold to reasonably conclude that mold existed in the building during Mr. Player’s tenancy. This is a factual dispute. Therefore, Framingham’s motion is denied.
ORDER
For these reasons, the defendant Framingham’s motion for summary judgment must be DENIED.

It is disputed as to when Mr. Player actually began to suspect a connection between the mold and his health problems. This dispute is the subject of the current motion. A few weeks before the newspaper article, Mr. Player ran into a woman, who had also worked in the building, at Staples. The two engaged in a casual conversation, during which the woman informed him that she had heard that the building was “loaded with mold.” Mr. Player stated in his deposition testimony that after his conversation with this woman he “started to wonder if perhaps the mold might have had some impact upon [his] health.” Joint Appendix, Exh. B, p. 148. The town alleges that it was at this point that he made a connection between the mold present in the building and his health issues.

he word “wonder” is defined as “to wish to know something: feel curiosity or doubt.” Webster’s Third New International Dictionary 2630 (2002).