NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1189

WENDY ERIKSON

vs.

BRUCE ERIKSON & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendants appeal from a judgment of a judge of the Land Court that concluded that one of the defendants, Bruce Erikson, had unduly influenced his mother, Doris Erikson, and therefore voided a deed by which Doris granted a parcel of real property in Danvers (the subject property) to the other defendants, Danielle Erikson and Eva Erikson.[2]  The defendants argue that the trial judge erred in concluding that Bruce unduly influenced Doris in executing the deed.  We disagree and therefore affirm.

---

[1] Danielle K. Erikson and Eva Erikson.

[2] Because so many of the parties share a last name, after the first mention of each party, we use first names to identify them.

Facts.  1.  Wendy Erikson and the subject property.  The judge found the following facts.  Doris and her husband, Herman Erikson, had three children:  Wendy Erikson, Bruce Erikson, and Gayle O'Connell.  Around August 1985, Doris and Herman acquired the subject property.  They told the seller that this property was "exactly what [they wanted] for [their] daughter, Wendy."  Doris told Wendy that they purchased this property to be her inheritance.  Although her parents never put the subject property in her name because they were concerned about the implications for the property if Wendy were to marry in the future, Wendy has lived at the property since approximately 1985, the year her parents purchased it.  Wendy and her parents agreed that Wendy was responsible for the property's upkeep, utilities, insurance, and taxes, and Wendy made major repairs and improvements to the property during the years she resided at the property.  In 2004, Wendy suffered a motorcycle accident, and became paraplegic.

2.  Doris's condition.  After Herman's death in 1993, Doris began calling Wendy, Gayle, and the Danvers police department, telling them that people were coming into her home and that things were missing.  Wendy and Gayle eventually met with a psychologist from the police department to discuss Doris's behavior and ways to cope with it.

In 2003, Doris conveyed a condominium unit to Noah Erikson, one of Bruce's children. Doris executed two separate deeds purporting to convey the same property to Noah, and after the conveyance, Doris and Noah disputed whether this conveyance was a gift or Noah owed Doris money for the property. The judge in this case, which does not involve that conveyance, concluded that Doris did not fully comprehend the consequences of signing those deeds.

Doris moved in with Bruce and his family in 2005. Around this time, Doris also struggled with mobility issues.

3. <u>Bruce, Doris, and the subject property</u>. Bruce worked as a registered investment advisor for several years. Bruce's company began to struggle in 2001 and eventually closed around 2008. As a result, Bruce struggled financially at this time, so much so that he sought a reduction in his alimony payments to his previous spouse in 2003.

Doris had invested with one of Bruce's investment companies, and around the time she lived with Bruce and his family, Doris also wrote checks for substantial sums to Bruce and members of his family. While she lived with Bruce and his family, on November 21, 2006, Doris executed a deed, which purported to convey the subject property in which Wendy lived to Bruce's twin minor daughters, Danielle and Eva, retaining a life estate for Doris. Doris was eighty-one years old at the time,

3

while Danielle and Eva were six years old. Wendy was never informed of this deed during Doris's lifetime. The deed was recorded the day it was executed. Subsequently, in 2007, Bruce asked his son Robb, who was thirty-seven years old, if he would agree to have the house Wendy lived in put in his name.

4. Subsequent events. In 2007 or 2008, Doris moved into Turtle Woods, a community that had staff to assist residents as needed. Doris later moved to a nursing home. The staff at the nursing home told Wendy that Doris continued to suffer from anxiety and paranoia throughout her time there. Doris passed away on May 21, 2020. She died intestate, so her estate would have gone to her descendants per capita at each generation. See G. L. c. 190B, § 2-103.

Wendy first learned of the 2006 deed purporting to convey the house she lived in to Danielle and Eva after Doris's death. On September 15, 2020, Wendy filed the underlying complaint seeking to have the 2006 deed voided on grounds including undue influence, naming Bruce, Danielle, and Eva as defendants. The ensuing trial took place over Zoom.

At trial, during a sidebar in the middle of Bruce's testimony, Bruce asked a person off-screen, "What's the answer to the question?" and reviewed documents. When asked whether he had reviewed documents or conversed with anyone during the sidebar, Bruce lied, stating that he had only asked for a glass

of water.  Danielle also interacted with someone off-screen during her testimony and answered misleadingly when asked about the interaction.  Based on Bruce's and Danielle's conduct while testifying, the trial judge credited only the portions of Bruce's and Danielle's testimony favorable to the defendants that were corroborated by another source.

The trial judge concluded that Bruce exercised undue influence over Doris and voided the 2006 deed.  This appeal followed.

Discussion.  1.  Preliminary matters.  Before we address the merits of this appeal, we must resolve three initial issues.

a.  Statute of limitations.  First, the defendants argue on appeal that the trial court erred in concluding that Wendy's claims were not barred by the statute of limitations.  The three-year statute of limitations set out in G. L. c. 260, § 2A, applies to undue influence claims.  Howe v. Palmer, 80 Mass. App. Ct. 736, 742 (2011).  Under the discovery rule, though, the statute of limitations does not start to run until "the plaintiff discovers, or reasonably should have discovered, 'that [she] has been harmed or may have been harmed by the defendant[s'] conduct.'"  Koe v. Mercer, 450 Mass. 97, 101 (2007), quoting Bowen v. Eli Lilly & Co., 408 Mass. 204, 205 (1990).

Here, the defendants raised the statute of limitations in a motion for summary judgment, arguing that Wendy may not take advantage of the discovery rule because her failure to conduct a title search or hire an attorney to help her discern when her cause of action accrued did not render her claim unknowable. The trial judge denied the motion for summary judgment on this issue, concluding that the discovery rule applied, but reserving for trial the factual question of when Wendy discovered that the subject property had been conveyed to Danielle and Eva. Preliminarily, although Wendy argues otherwise, we can and will review the trial judge's legal determination that the discovery rule applies. See Waxman v. Waxman, 84 Mass. App. Ct. 314, 321-322 (2013), citing Bacon v. Federal Kemper Life Assur. Co., 400 Mass. 850, 851 n.3 (1987) (noting that though generally "a party cannot appeal from the denial of summary judgment on a claim or defense after a trial on the merits of that claim or defense," but concluding that denial of summary judgment was reviewable where, at trial, the pertinent issue -- here applicability of the discovery rule -- was treated "as resolved and located beyond the scope of triable issues").

The defendants rely in part on Friedman v. Jablonski, 371 Mass. 482, 486 (1976), in arguing that Wendy cannot take advantage of the discovery rule because she failed to conduct a title search or hire an attorney to help her discern when her

6

cause of action accrued.  This case, however, is a far cry from Friedman, which involved alleged misrepresentations during the sale of a parcel of land, and the plaintiffs "could reasonably have known" of the alleged misrepresentations by the time they accepted a deed to the land by checking the registry of deeds. Friedman, 371 Mass. at 486.  Here, however, "there was no event, much less one comparable to the purchase of real estate in Friedman, that should have prompted the plaintiff to check the records at the registry of deeds."  Pruner v. Clerk of Superior Court, 382 Mass. 309, 312 n.7 (1981).  Wendy, therefore, did not forfeit the benefits of the discovery rule by failing to do so.

Given that the discovery rule applies, the statute of limitations for Wendy's undue influence claim began to run when she discovered or reasonably should have discovered that she had been harmed by the defendants' conduct.  See Koe, 450 Mass. at 101.  At trial, the defendants argued that Wendy reasonably should have known that the subject property had been conveyed to Danielle and Eva more than three years prior to her filing this action because she should have applied to the town for permits for various home improvement projects.  The Danvers building commissioner testified that only the homeowner or a licensed contractor can apply for these permits.  The defendants argued that, had Wendy applied for these permits as she was supposed to, she would have had to discuss the projects and the ownership

7

of the property with Doris and would have learned that Doris had conveyed the property to Danielle and Eva.

The trial judge implicitly rejected this argument, finding that Wendy first learned of the deed conveying the subject property to Danielle and Eva shortly after Doris's death. We see no clear error in the judge's rejection of the argument that, because she should have applied for certain town permits, Wendy should have known about the conveyance more than three years before she filed this action. Further, the trial judge's finding that Wendy did not learn of the deed conveying the subject property to Danielle and Eva until after her mother's death is supported by Wendy's testimony. While the defendants point to testimony that Gayle told Wendy more than three years prior to her filing that the house would go to Danielle and Eva when Doris died, the judge need not have credited that testimony. It thus was not clear error for the trial judge to credit Wendy's testimony and find that she did not know about the deed until after Doris's death and that this lack of knowledge was objectively reasonable. See Koe, 450 Mass. at 101. See also Edinburg v. Edinburg, 22 Mass. App. Ct. 199, 203 (1986) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous" [citation omitted]). The statute of limitations began to run after May 21, 2020, the date of Doris's death, so

8

Wendy's claim, brought on September 15, 2020, was not time barred.

b. Hearsay. Next, the defendants argue that the trial court erred in admitting hearsay statements of Doris and Herman regarding their reason for purchasing the subject property, their representations to Wendy about the property's ownership, their statements about arrangements with Wendy regarding reimbursement of the carrying costs of the property, and "any related conversations." Under G. L. c. 233, § 65, in civil cases, statements made by deceased declarants are admissible despite the rule against hearsay "if the court finds that [the statements were] made in good faith and upon the personal knowledge of the declarant." There is no suggestion here that the statements were not made in good faith, but the defendants argue that this exception does not cover statements of opinion. Whether or not that is true, the statements of their reasons for purchasing the property, their intention that Wendy reside there, and their arrangement with Wendy were not statements of opinion, and all fall within this statutory hearsay exception. See American Family Life Ins. Co. of Columbus v. Parker, 488 Mass. 801, 803, 811 & n.11 (2022) (ex-wife's testimony that deceased ex-husband had intended for proceeds of his life insurance policy to support her and their sons admissible under § 65).

9

c.  _Parol evidence_.  The defendants also argue that these statements were admitted in violation of the parol evidence rule.  The parol evidence rule "bars the introduction of prior or contemporaneous written or oral agreements that contradict, vary, or broaden" a written contract that the parties intended to be a statement of their complete agreement (citation omitted).  _Winchester Gables, Inc_. v. _Host Marriott Corp_., 70 Mass. App. Ct. 585, 591 (2007).  Here, however, we are not interpreting a written agreement; instead, we are determining whether the circumstances surrounding a deed show that it was procured through undue influence.  As such, the parol evidence rule does not apply.

2.  _The merits_.  Having addressed these initial matters, we turn to the merits.  A deed may be invalidated if it was procured by undue influence.  _Howe_, 80 Mass. App. Ct. at 740.  "Any species of coercion, whether physical, mental or moral, which subverts the sound judgment and genuine desire of the individual, is enough to constitute undue influence."  _Neill_ v. _Brackett_, 234 Mass. 367, 369 (1920).  "A claim of undue influence is comprised of four elements:  '(1) an unnatural disposition has been made (2) by a person susceptible to undue influence to the advantage of someone (3) with an opportunity to exercise undue influence and (4) who in fact has used that opportunity to procure the contested disposition through

10

improper means.'" Matter of the Estate of Sharis, 83 Mass. App. Ct. 839, 842 (2013), quoting O'Rourke v. Hunter, 446 Mass. 814, 828 (2006).

We review a trial judge's findings, including findings that the elements of undue influence have been met, for clear error. See Hernon v. Hernon, 74 Mass. App. Ct. 492, 497-499 (2009), citing Matter of the Estate of Moretti, 69 Mass. App. Ct. 642, 650-651 (2007). "A finding is clearly erroneous . . . when there is no evidence to support it, or when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.'" Michelon v. Deschler, 96 Mass. App. Ct. 815, 816 (2020), quoting Care & Protection of Olga, 57 Mass. App. Ct. 821, 824 (2003).

Here, neither the trial judge's finding that the deed was procured through undue influence, nor his subsidiary findings, were clearly erroneous. To begin with, the trial judge did not err in finding that Bruce had a confidential relationship with Doris. "'[W]here a confidential relationship exists it generally takes less to establish undue influence on the part of beneficiaries' than in the ordinary case" where no such relationship exists. Cleary v. Cleary, 427 Mass. 286, 290 n.2 (1998), quoting Tetrault v. Mahoney, Hawkes & Golding, 425 Mass. 456, 465 (1997). While both parties bring up issues related to

11

fiduciary relationships and their impact on the undue influence analysis, confidential and fiduciary relationships are two distinct types of relationships with different legal implications. See Heinrich v. Silvernail, 23 Mass. App. Ct. 218, 225 n.8 (1986). Where a fiduciary relationship exists, if the fiduciary benefits from a transaction with their principal, the burden of proof shifts to the fiduciary to show that they did not unduly influence the grantor; where a confidential relationship exists, it is one factor that supports a finding of undue influence. Cf. Cleary, supra at 290, 292-293 & n.2. Close relationships that lack "the degree of reliance that usually lie[s] at the core of recognized fiduciary relationships" may still amount to confidential relationships. Heinrich, supra. For example, in Heinrich, a confidential relationship existed between a social worker and her client where the two became close friends, the social worker visited the client almost daily, and the social worker helped the client with his banking and his bills. Id. at 219-220, 225.

Given that Doris had invested with one of Bruce's investment companies and that she lived with Bruce at the time of the deed's execution, there was adequate support for the judge's finding that Bruce similarly had a confidential relationship with Doris. Thus, it took "less to establish" that Bruce unduly influenced Doris than in a case where no such

12

relationship existed (citation omitted). Cleary, 427 Mass. at 290 n.2.

a. First element. As to the first element of undue influence, the trial judge found that the disposition in the deed was unnatural because it was highly unusual to convey real estate to six year old children and to retain a life estate in property one does not intend to occupy. In the absence of any evidence suggesting some tax-related or other reason for this arrangement, we see no error in this finding.

b. Second element. As to the second element, age, cognitive impairment, and dependence on others are all factors relevant to one's susceptibility to undue influence. See Neill, 234 Mass. at 369-370; B.W. v. J.W., 67 Mass. App. Ct. 295, 299-300 (2006). Here, Doris was eighty-one years old when she signed the 2006 deed. Along with her age, the trial judge credited Wendy's testimony about Doris's many encounters with the Danvers police and her "unfounded" fears of people breaking into her home and taking her things. Based on this, the trial judge found that "Doris showed signs of paranoia and anxiety . . . from at least 1995 until she died in 2020." Further, the judge noted that there was evidence in the record that, on another occasion, Doris had executed deeds without fully understanding the consequences or surrounding circumstances. As described above, Doris had previously executed two deeds

13

conveying the same single condominium to one of Bruce's sons, and there was a disagreement between Doris and Bruce's son as to whether this was a gift. Given all the circumstances, the trial judge did not err in concluding that Doris, at times, suffered from confusion about what was happening around her. The judge's conclusion that her confusion, coupled with her age, made her susceptible to undue influence was supported by the evidence and not clearly in error.

The defendants take issue with the fact that there was no expert medical testimony, medical records, or testimony from a witness to the conveyance supporting the finding of susceptibility. The case that the defendants rely on in arguing that one of these types of evidence was required deals with testamentary capacity, not susceptibility to undue influence. See Haddad v. Haddad, 99 Mass. App. Ct. 59, 69 (2021). They provide no authority for the proposition that such evidence was required to support the judge's finding with respect to susceptibility.

The defendants also claim that unrebutted testimony shows Doris was not susceptible to undue influence. The evidence they rely on, however, does not compel such a conclusion. Much of the testimony they point to came from either Bruce or Danielle, who the trial judge discredited. Although there was some testimony suggesting Doris retained mental acuity, there was

14

also testimony tending to show that she suffered from bouts of confusion, paranoia, and anxiety.  The trial judge was free to credit the testimony that tended to show that Doris was confused and susceptible to undue influence, rather than testimony that might have tended to show she was not.  See Wakefield v. Hegarty, 67 Mass. App. Ct. 772, 774 (2006).

The defendants also argue that the trial court made an error of law in concluding that the defendants had to provide evidence that Doris had independent counsel at the signing of the 2006 deed, or consulted with independent counsel before signing the deed, and that Doris understood the consequences of the 2006 deed.  They misread the judge's decision.  As to independent counsel, the judge did not require that the defendants present evidence of this; the judge merely listed Doris's lack of independent counsel as one of many facts that showed that Doris was susceptible to undue influence. Similarly, the trial judge's statement that there was no evidence Doris understood the consequences of the deed was not a holding that the defendants had to present some evidence to this effect.  Rather the judge was noting that, in the absence of any such evidence, he could rely on the other record evidence to conclude that Doris was susceptible to undue influence at the time.  There was no legal error.

c.  Third element.  Next, the trial judge did not err in finding that Bruce had the opportunity to exercise undue influence over Doris.  The defendants argue that Doris could not have been as dependent on Bruce and his family as the trial judge found because she lived independently after living with them.  The fact remains, though, that Doris was living with Bruce and his family at the time she executed the deed, and at that time, she struggled with mobility and had reduced independence.  As such, the trial judge's finding that Bruce had the opportunity to influence Doris was not clear error.

d.  Fourth element.  Finally, there was no clear error in the judge's finding that Bruce in fact "used [his] opportunity to procure the [deed] through improper means," as this was supported by the record (citation omitted).  O'Rourke, 446 Mass. at 828.  Bruce benefitted from this conveyance because it benefitted his minor children, thereby reducing the financial burden of supporting them.  Further, Bruce believed he could control the property that was conveyed to his own minor children; he in fact tried to exercise that control by asking one of his other children if he would have the property put in his name.  The fact that Bruce's own minor children, and no other relative of Doris, benefitted from this conveyance, combined with the confidential relationship between Bruce and Doris, and the fact that Bruce sought to exercise control of the

16

property was enough to support the trial judge's finding that Bruce did in fact procure the deed's execution by Doris through improper means.[3]

Given all this, the trial judge's conclusion that Bruce unduly influenced Doris was not clearly erroneous.  The judgment of the Land Court is affirmed.[4]

So ordered.

By the Court (Rubin,
  Desmond & Singh, JJ.[5]),

Clerk

Entered:   February 24, 2025.

---

[3] The defendants are correct that it was error for the judge, on the basis of his conclusion that Bruce lied when he testified he "had nothing to do with the 2006 deed and had no knowledge of it," to conclude the opposite.  See Kunkel v. Alger, 10 Mass. App. Ct. 76, 86 (1980) ("mere disbelief of testimony does not constitute evidence to the contrary.")  As there was abundant evidence and supported findings of subsidiary fact supporting the finding not only of Bruce's knowledge but of his exercise of undue influence, this error was harmless.

[4] Wendy's request for attorney's fees and costs under Mass. R. A. P. 25, as appearing in 481 Mass. 1654 (2019), is denied.  See Avery v. Steele, 414 Mass. 450, 455 (1993) ("Unpersuasive arguments do not necessarily render an appeal frivolous").

[5] The panelists are listed in order of seniority.