LAWRENCE GENOVESI *vs.* ANDREW NELSON & others.[1]

No. 13-P-661.

Norfolk. December 9, 2013. - March 5, 2014.

Present: GRAINGER, BROWN, & CARHART, JJ.

*Limitations, Statute of. Practice, Civil,* Statute of limitations, Motion to dismiss. *Notice. Fraud. Negligence,* Misrepresentation. *Fiduciary. Consumer Protection Act,* Pleading, Securities transactions. *Uniform Securities Act. Securities.*

In a civil action arising from a 2004 investment made by the plaintiff, a Superior Court judge erred in allowing the motions to dismiss of the defendant financial advisor and sales agents, where the three- and four-year statutes of limitations applicable to the plaintiff's claims for fraud, fraudulent inducement, negligent misrepresentation, breach of fiduciary duty, and violations of G. L. c. 93A, § 9, and the Massachusetts Uniform Securities Act, G. L. c. 110A, § 410(a)-(b), were tolled under the discovery rule, in that the plaintiff adequately averred that he neither knew nor should have known that he was harmed by the defendants' conduct until a date that came within the applicable period of the statutes of limitations preceding the 2011 filing of his action; and where the plaintiff adequately pleaded the breach of a fiduciary relationship by one of the defendants. [46-50]

CIVIL ACTION commenced in the Superior Court Department on July 29, 2011.

A motion to dismiss was heard by *Paul E. Troy,* J.

*Michael R. Perry* for the plaintiff.

*Charles L. Solomont* for Andrew Nelson.

*Christopher P. Litterio* for Steven Ricciardi & another.

GRAINGER, J. The plaintiff, Lawrence Genovesi, appeals from an order entered by a judge in the Superior Court allowing the defendants' motions to dismiss his third amended complaint on statute of limitations grounds.

*Factual background.* We recite those facts alleged in the

[1]Steven Ricciardi and Gannon McCaffery.

complaint that plausibly suggest entitlement to relief, taking them as true for purposes of our review of the judge's ruling on the motion to dismiss. See *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 635-636 (2008). In 2003 and 2004, Genovesi, who then was serving as board chair at Network Engines, Inc., realized a cash gain of approximately $3 million from his company's stock participation plan. At the time, his home was encumbered by a $1.5 million mortgage subject to a prepayment penalty. Accordingly, Genovesi sought a low-risk liquid investment to ensure he would have cash on hand to discharge the mortgage when the prepayment penalty period expired. Genovesi, an unsophisticated investor,[2] consulted with his financial advisor, Andrew Nelson, at Lehman Brothers, Inc. (Lehman), to identify an appropriate investment vehicle for his cash holdings. Nelson recommended that Genovesi invest in a collateralized debt obligation known as "Paragon CDO." Nelson told Genovesi that the Paragon CDO investment presented low risk, similar to a United States Treasury or municipal bond. Nelson further represented that the Paragon CDO was comprised of AAA-rated debt and that Genovesi's risk was limited only to the yield. At Nelson's recommendation, Genovesi met with two additional Lehman sales agents, Steven Ricciardi and Gannon McCaffery. Ricciardi and McCaffery also advised Genovesi that the Paragon CDO was low risk and was comprised of AAA-rated debt, and that the risk profile was similar to that of a United States Treasury or municipal bond. In reliance on the representations made by Nelson, Ricciardi, and McCaffery, Genovesi invested $1 million in Paragon CDO.

On November 24, 2004, Nelson provided Genovesi with the unattached signature pages to two documents; the pages were entitled "Paragon CDO, Limited, subscription agreement, preference shares" (subscription agreement), and "Risk Factors Acknowledgment" (RFA) (collectively, the account documents). Genovesi executed the signature pages "in blank," and alleges that Nelson never provided him with copies of the account documents.

---

[2] We find no support in the sparse record for the judge's finding to the contrary. The record demonstrates only that Genovesi's financial wherewithal resulted from his ownership and participation in a successful technology-based company rather than from investment or financial dealings.

Unbeknownst to Genovesi, he was not qualified to invest in the Paragon CDO under Lehman's guidelines for individual investors. Without Genovesi's involvement or knowledge, Nelson prepared an investor profile that contained multiple misrepresentations about Genovesi's assets, income, and investment experience that, if true, would have qualified him to invest in the CDO.[3] The defendants also failed to inform Genovesi that the Paragon CDO had two classes of shares: one consisting of AAA-rated debt and another consisting of Baa3-rated debt labeled "preference shares." The preference shares were rated as a "moderate credit risk," possessing "speculative characteristics." Nelson invested Genovesi's entire $1 million in the preference shares.

In February, 2009, the Paragon CDO announced that the preference shares no longer would pay any interest and would not return any principal. Genovesi lost his entire investment. In July, 2011, Genovesi filed a complaint in Superior Court alleging fraud, fraudulent inducement, negligent misrepresentation, breach of fiduciary duty, and violations of G. L. c. 93A, § 9, and G. L. c. 110A, § 410(*a*)-(*b*) (the Massachusetts Uniform Securities Act, hereinafter MUSA). Shortly after filing his complaint, Genovesi filed an amended complaint and then a second amended complaint.

A Superior Court judge allowed the defendants' motions to dismiss the second amended complaint on the ground that almost seven years had elapsed between Genovesi's Paragon CDO purchase and the filing of his complaint, and that he had failed to plead any facts upon which to toll the statutes of limitations. The judge, however, provided Genovesi twenty days to cure the pleading defects, and Genovesi timely filed a third amended complaint. The defendants moved to dismiss the third amended complaint. A second Superior Court judge allowed their motions, this time with prejudice, finding as a matter of law that the account documents put Genovesi on notice of his claims in

[3]In particular, the investor profile stated that Genovesi had an aggregate net worth of $15 million (approximately five times greater than his actual net worth), a liquid net worth of $10 million (Genovesi's actual liquid net worth was approximately $2 million), and an annual salary of $1 million (in 2004, his actual annual salary was $200,000). The profile also contained misrepresentations as to Genovesi's investment experience and sophistication.

2004, and that he failed sufficiently to plead the existence of a fiduciary relationship. Genovesi filed this timely appeal.

*Discussion.* "We review the allowance of a motion to dismiss de novo," *Curtis* v. *Herb Chambers I-95, Inc.*, 458 Mass. 674, 676 (2011), accepting as true "the factual allegations in the plaintiff['s] complaint, as well as any favorable inferences reasonably drawn from them," *Ginther* v. *Commissioner of Ins.*, 427 Mass. 319, 322 (1998). Although detailed factual allegations are not required, a complaint must set forth "more than labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Iannacchino*, 451 Mass. at 636, quoting from *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007).

Genovesi's claims are subject to either three- or four-year limitations periods;[4] assuming that he was injured when his funds first were invested in 2004, his claims expired in 2007 and 2008. Genovesi asserts that this action, commenced in July of 2011, was timely because he neither knew nor should have known that he had suffered an injury as a result of the defendants' conduct until he lost his investment in February 2009. In the alternative, Genovesi argues that Nelson assumed the role of a fiduciary, violated his duty to Genovesi by withholding "inherently unknowable"[5] material information, and so prevented discovery of the injury until 2009. Both arguments rely on the concept of tolling the statute of limitations under the discovery rule. In either case, we consider whether Genovesi's complaint adequately avers that he neither knew nor should have known that he was harmed by the defendants' conduct until a date that falls within the applicable three-or four-year period preceding his filing in 2011.

"In tort actions and actions for violation of G. L. c. 93A, the cause of action accrues at the time the plaintiff is injured." See *Stark* v. *Advanced Magnetics, Inc.*, 50 Mass. App. Ct. 226, 232

---

[4]Genovesi's statutory claims are subject to four-year limitations periods, see G. L. c. 260, § 5A, and G. L. c. 110A, § 410(*e*), while his common-law claims are subject to three-year limitations periods, see G. L. c. 260, § 2A.

[5]We use the phrases "should not have known" and "inherently unknowable" interchangeably in our consideration. See *Williams* v. *Ely*, 423 Mass. 467, 473 n.7 (1996) (discovery rule's "inherently unknowable" standard is used interchangeably with "knew or should have known" standard).

(2000). A claim under MUSA accrues when a reasonable investor would have noticed that something was "amiss." *Marram* v. *Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 54 n.20 (2004). The defendants assert that Genovesi had actual notice of his claims in 2004 or, at the very least, had constructive notice when he signed the signature pages of the account documents. According to the defendants, the signature pages contained conspicuous disclosures that defeat any legally cognizable contention that the misrepresented facts were inherently unknowable. We disagree. There is no principle of law under which a lay investor such as Genovesi is deemed to understand the reference to "preference shares"[6] at the top of the signature page of the subscription agreement as a warning that his investment was not as represented.

The defendants also point to the reference to "risk" at the top of the signature page of the RFA. They argue, correctly, that the acknowledgment at the top of the RFA signature page should have given Genovesi caution in signing in blank without requesting to review the entire document. However, the reasonableness of his actions in the circumstances is a question of fact that is not appropriately resolved on a motion to dismiss. See *id.* at 59-60 (reasonableness of plaintiff's reliance may be considered question of law, "but generally only after some record has been established on a motion for summary judgment or after a trial"). See also *Patsos* v. *First Albany Corp.*, 433 Mass. 323, 329 (2001) ("factual disputes concerning when a plaintiff knew or should have known of his cause[s] of action are to be resolved by the jury"), quoting from *Riley* v. *Presnell*, 409 Mass. 239, 247 (1991). Thus, we reject the defendants' argument that the signature pages provide a legal basis to dismiss Genovesi's complaint on the rationale that their wording requires a ruling that he had actual knowledge of his claims in 2004.

Alternatively, the defendants argue that Genovesi should be charged with knowledge of the full contents of the account documents as a matter of law, regardless of his averment that he never received copies, because one who signs his name to a

---

[6]To the extent that the signature pages themselves can be alleged to contain representations about the nature of the investment vehicles, the term "preference" commonly connotes desirability and not a speculative level of risk.

legal document is presumed to have knowledge of its contents. See, e.g., *Kuwaiti Danish Computer Co.* v. *Digital Equip. Corp.*, 438 Mass. 459, 465 (2003); *Mayflower Seafoods, Inc.* v. *Integrity Credit Corp.*, 25 Mass. App. Ct. 453, 459 (1988); *Hull* v. *Attleboro Sav. Bank*, 33 Mass. App. Ct. 18, 24 (1992). We consider the presumption misapplied here. Genovesi has alleged that he never had the opportunity to review the account documents because Nelson withheld them from him. It was critical to the holdings of the above-cited cases that those plaintiffs had the opportunity to review the legal documents they signed, but chose not to do so. See *Kuwaiti Danish Computer Co.*, *supra* (plaintiff "reviewed the quotation and had the opportunity to read the qualifying language, but instead ignored it"); *Mayflower Seafoods, Inc.*, *supra* at 458-459 (plaintiff's assertion that he did not understand terms of lease was unavailing where lease agreement was two-page document printed double-sided and he was given opportunity to review it); *Hull*, *supra* at 24 n.8 (plaintiff, a lawyer, claimed he did not remember preparing or signing letter in question, but raised "no claim that his signature was procured by fraud or undue influence"). Moreover, those cases involved legal documents that were negotiated by adverse parties at arm's length, did not involve allegations of a fiduciary relationship, and were not decided on a motion to dismiss. For all of these reasons, we conclude that the judge erred in finding as a matter of law that Genovesi had actual or constructive knowledge of his claims in 2004.

For his part, Genovesi asserts that he did not suffer any harm until the Paragon CDO collapsed in 2009, and that he could not have filed suit any earlier because his causes of action were not complete until he lost his investment. We evaluate this argument solely with respect to his claims alleging negligence and violation of c. 93A. The other causes of action accrued — regardless of the portfolio's performance — when Genovesi's funds were invested in the preference shares;[7] conversely, we acknowledge that causes of action based on negligence and

---

[7] We are unpersuaded by Genovesi's argument that he was precluded from asserting his rights before suffering actual financial loss because neither Lehman nor the defendants were the issuers of the securities and therefore could not be ordered to unwind the investment. Assuming that the defendants had

c. 93A require a showing of financial detriment to satisfy the element of harm. See *Hershenow* v. *Enterprise Rent-A-Car Co. of Boston,* 445 Mass. 790, 797 (2006) (c. 93A claim requires proof of causal loss); *Nota Constr. Corp.* v. *Keyes Assocs., Inc.,* 45 Mass. App. Ct. 15, 20 & n.1 (1998) (negligent misrepresentation claim requires proof of "pecuniary loss").

However, we agree with the defendants that the principle of ratification applies to prevent tolling of all of Genovesi's causes of action once he was, or should have been, aware of the alleged fraud or misrepresentations.[8] It long has been recognized that, once possessed of actual or constructive knowledge, a plaintiff in Genovesi's position cannot simply wait for an unfavorable return before asserting his rights. See *Krinsky* v. *Whitney,* 315 Mass. 661, 667 (1944) (plaintiff who intends to rescind agreement on account of fraud "could not stand by . . . until it appeared whether the account would prove profitable or otherwise"); *Mechanics Natl. Bank of Worcester* v. *Killeen,* 377 Mass. 100, 114-115 (1979) (broker not liable for improper sale of stock beyond when customer could have rectified error). See also *Schofield* v. *First Commodity Corp. of Boston,* 793 F.2d 28, 36 (1st Cir. 1986). Accepting his allegations as true for purposes of the motion to dismiss, Genovesi first knew that he had been misled in 2009 when the Paragon CDO announced that it would not pay interest or return any principal for the preference shares. Whether Genovesi received periodic account statements or other materials that did, or should have, put him on notice earlier than 2009 is a matter that may be resolved through discovery or at trial.

Finally, we turn to Genovesi's assertion that the statute of limitations was tolled on the additional basis of Nelson's breach

been found liable, they could have been required to place Genovesi in the correct investment or in a financial position equivalent to that he would have occupied had their representations been truthful. See generally *Mechanics Natl. Bank of Worcester* v. *Killeen,* 377 Mass. 100, 113 (1979) (damages for bank's unauthorized sale of stock measured by value at time of wrongful conduct). Cf. *Krinsky* v. *Whitney,* 315 Mass. 661, 666 (1944).

[8] "Ratification is a doctrine of agency law in which a principal is deemed to adopt the previously unauthorized actions of his or her agent by failing to object after finding out about them." *Schofield* v. *First Commodity Corp. of Boston,* 793 F.2d 28, 36 (1st Cir. 1986), citing *Jaksich* v. *Thomas McKinnon Sec., Inc.,* 582 F. Supp. 485, 496 (S.D.N.Y. 1984), and Reuschlein and Gregory, Agency and Partnership 72 (1979).

of his fiduciary duty. Genovesi has alleged that he was an unsophisticated investor, that Nelson had specialized knowledge inherent in the exercise of his profession, that Nelson encouraged Genovesi to rely on his expertise, that Genovesi did so rely, and that it was Nelson's practice in managing Genovesi's investments to ask him to sign documents in blank. Genovesi has made a prima facie claim for breach of fiduciary duty. See *Patsos* v. *First Albany Corp.*, 433 Mass. at 336-337. He also adequately has alleged that Nelson's material omissions are "equivalent to fraudulent concealment" for purposes of G. L. c. 260, § 12. *Id.* at 329, citing *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501, 519 (1997). It was error to conclude as a matter of law that the third amended complaint failed to plead the breach of a fiduciary relationship by Nelson.[9]

*Conclusion.* On this record the allowance of the motions to dismiss the third amended complaint was error. The pleadings allege with sufficient detail that Genovesi was misled by Nelson, assisted by Ricciardi and McCaffery, into believing he had placed his funds in a liquid low-risk investment, and that the truth was inherently unknowable, thus setting forth a legal basis to toll the statute of limitations. The extent to which Genovesi had access to contrary information, rendering his reliance and continued acquiescence unreasonable (thus causing the statutes of limitations to run their course), is neither evident factually nor compelled legally by his signature on the signature pages the defendants provided. With the exception of the breach of fiduciary duty claims against Ricciardi and McCaffery which properly were dismissed, we reverse the judgment allowing the motions to dismiss Genovesi's third amended complaint, and remand the matter to the Superior Court for further proceedings consistent with this opinion.[10]

*So ordered.*

[9]It appears from the record that the second judge based the dismissal of Genovesi's fiduciary duty claims against Nelson on a misreading of the first judge's ruling. The first judge determined that Genovesi had failed to allege sufficient facts to support a fiduciary relationship only with respect to Ricciardi and McCaffery. Genovesi does not challenge the dismissal of his claims of breach of fiduciary duty as to those two defendants.

[10]We deny the request for appellate fees by Ricciardi and McCaffery.