SUPREME JUDICIAL COURT 
 
 CAMILA DAVALOS & others[1] vs. BAY WATCH, INC.[2]

 
 Docket:
 SJC-13534
 
 
 Dates:
 April 3, 2024 - September 4, 2024
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, & Dewar, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Social Media. Internet. Libel and Slander. Privacy. Limitations, Statute of. Practice, Civil, Statute of limitations.
 
 

  
      Certification of a question of law to the Supreme Judicial Court by the United States District Court for the District of Massachusetts.
      John V. Golaszewski, of New York (Paul Sullivan also present) for the plaintiffs.
      Christopher A. Monson for the defendant.
      KAFKER, J.  The plaintiffs in this case, a group of professional models, allege that the defendant improperly used their images in social media posts to promote its adult entertainment nightclub between August 2013 and November 2015.  They filed suit in the United States District Court for the District of Massachusetts (District Court) alleging defamation and other related tort claims, but not until 2021 -- well outside the three-year limitations period specified by G. L. c. 260, § 2A.  To avoid dismissal at summary judgment, the plaintiffs argued for application of the "discovery rule," which would prevent the running of the limitations period until the plaintiffs knew or reasonably should have known that they had been harmed by the alleged tortfeasor.  The motion judge, noting that "[t]he application of the discovery rule to posts on a social media platform . . . is a novel circumstance that Massachusetts courts have not yet considered," certified to us the following question:
"Under what circumstances, if any, is material publicly posted to social media platforms 'inherently unknowable' for purposes of applying the discovery rule in the context of defamation, right of publicity, right to privacy and related tort claims?"
      We answer that question as follows.  Claims for defamation, violation of the right to privacy, violation of the right of publicity, and related claims that arise from material posted to social media platforms accrue when a plaintiff knows, or reasonably should know, he or she has been harmed by the defendant's publication of that material.  Given how "vast" the social media universe is on the Internet,[3] and how access to, and the ability to search for, social media posts may vary from platform to platform and even from post to post, that determination requires consideration of the totality of the circumstances regarding the social media posting, including the extent of its distribution, and the accessibility and searchability of the posting.  The application of the discovery rule is therefore a highly fact-specific inquiry, and the determination of whether plaintiffs knew or should have known that they were harmed by a defendant's post on social media must often be left to the finder of fact.  If, however, the material posted to social media is widely distributed, and readily accessible and searchable, a judge may determine as a matter of law that the discovery rule cannot be applied. 
      Background.  The District Court did not ask us whether the discovery rule applied on the specific facts of the case at bar, and the record before us appears to be incomplete.  We nevertheless recite certain facts from the record available to us to provide some context for the case and for our discussion.
      The plaintiffs are established professional models who reside in States other than Massachusetts.  Some claim to have thousands (or millions) of social media followers, and each has been a plaintiff in multiple lawsuits alleging misuse of their image similar to the case at bar.[4]
      At some point prior to 2014, photographs were taken of the plaintiffs in their professional capacity.  These photographs were, according to the plaintiffs, publicly viewable to some degree, whether because the plaintiffs themselves posted the images to their own social media accounts or because the images were licensed for use to third parties. 
      In 2021, the plaintiffs filed the instant lawsuit, alleging that the defendant's adult entertainment nightclub, which had no affiliation with the plaintiffs, posted the pictures of them to its Facebook account without their consent.  The five posts in question occurred between August 2013 and November 2015, and each depicts one or two of the plaintiffs "in scanty attire" (to borrow the words of the District Court).  The plaintiffs' names were not attached to the pictures in any way.  Four of the posts include text separate from the pictures advertising events and specials at the nightclub -- including such details as "Two for $30 Dances | Two for $20 Back Massages" or "Free Admission if your [sic] . . . show your Twitter mention & Naked Women" --  while the fifth advertises a Veteran's Day special via text that is incorporated directly into the photograph, with one of the plaintiffs pictured wearing a tight, camouflage-patterned outfit and sunglasses.  The versions of the Facebook posts appended to the plaintiffs' complaint reflect certain amounts of interaction with other users of Facebook, showing for each post between three and twenty "likes," between zero and two "shares," and on one post, a single comment.
      None of the plaintiffs can recall exactly how or when she first discovered the existence of these posts by the defendant. A paralegal employed by the plaintiffs' counsel, however,   averred that, as part of her duties since her hiring in 2015, she conducts "painstaking" manual searches of the websites and social media pages of various businesses that are suspected of misusing her firm's clients' images.[5]  She further attested that there is no software that would allow her to efficiently search for the images in question and that Internet search engines do not search social media posts.[6]  As a result, the only available method is this "particularized research of particular establishments."  It is this process, presumably, that led the plaintiffs to the defendant's Facebook posts.
      Discussion.  General Laws c. 260, § 2A, establishes the default statute of limitations for tort claims, which must be "commenced only within three years next after the cause of action accrues."  As a general matter, a cause of action sounding in tort accrues on the date the plaintiff suffers an injury.  Passatempo v. McMenimen, 461 Mass. 279, 293-294 (2012), citing Koe v. Mercer, 450 Mass. 97, 101 (2007).  In this case, the injury or harm is caused by the publication of the allegedly defamatory material, that is, the publication of the photographs suggesting that the plaintiffs worked at the adult entertainment club.  In such cases, "the general rule is that the cause of action accrues, and the statute of limitations begins to run, on publication of the defamatory statement."  Harrington v. Costello, 467 Mass. 720, 725 (2014), quoting Flynn v. Associated Press, 401 Mass. 776, 780 (1988).  See Wolsfelt v. Gloucester Times, 98 Mass. App. Ct. 321, 324 (2020) (same).
      However, we have also "recognized the unfairness of a rule that holds that the statute of limitations has run even before a plaintiff knew or reasonably should have known that she may have been harmed by the conduct of another."  Bowen v. Eli Lilly & Co., 408 Mass. 204, 205 (1990).  See Hendrickson v. Sears, 365 Mass. 83, 89-90 (1974) (collecting cases).  To combat this unfairness, we have adopted a common-law "discovery rule for the purpose of determining when a cause of action accrues, and thus when the statute of limitations starts to run."  Bowen, supra.  Under this discovery rule, "a cause of action accrues when the plaintiff discovers or with reasonable diligence should have discovered that (1) [she] has suffered harm; (2) [her] harm was caused by the conduct of another; and (3) the defendant is the person who caused that harm."  Magliacane v. Gardner, 483 Mass. 842, 851 (2020), quoting Harrington, 467 Mass. at 727.  
      We have held that the discovery rule applies to a wide variety of tort claims, including those for defamation.[7]  See Harrington, 467 Mass. at 727 n.10 (explaining that discovery rule applies "generally" to defamation claims).  See, e.g., Fidler v. E.M. Parker Co., 394 Mass. 534, 544 (1985) (negligence and products liability); Franklin v. Albert, 381 Mass. 611, 618–619 (1980) (medical malpractice); Friedman v. Jablonski, 371 Mass. 482, 485 (1976) (fraudulent misrepresentation); Hendrickson, 365 Mass. at 83–84 (negligence in attorney certifying title to real estate).  Thus, although the default rule is that a claim for defamation accrues (and the limitations clock begins to run) upon publication of the defamatory material, see Harrington, supra at 725, a plaintiff who sues more than three years after publication can defeat a limitations defense by demonstrating that she neither knew nor should have known of the publication.  Our common law, however, further explains that "where an alleged defamatory publication is broadly circulated to the public, and did not involve concealment or confidential communications," the discovery rule will not be applied, and the cause of action will accrue upon publication, as such widespread publication should have been discovered by the plaintiff.  Wolsfelt, 98 Mass. App. Ct. at 328, citing Harrington, supra at 727 n.10, and Flynn, 401 Mass. at 781-782 & n.7.  We have not, as the District Court recognized, had a case requiring us to consider the discovery rule in the context of social media.  
      1.  "Inherently unknowable."  Before we turn to the heart of the certified question, we pause to address the question's use of the phrase "inherently unknowable."  We have at times described the discovery rule as only available to plaintiffs whose claims were "inherently unknowable."  See, e.g., Harrington, 467 Mass. at 725; Melrose Hous. Auth. v. New Hampshire Ins. Co., 402 Mass. 27, 31 (1988).  The defendant argues that these cases stand for the proposition that courts considering application of the discovery rule undertake a threshold inquiry, asking whether the cause of action is, in some categorical fashion, "inherently unknowable."  
      We disagree.  As we have explained in several cases, the "inherently unknowable" standard "is no different from, and is used interchangeably with, the 'knew or should have known' standard."  Williams v. Ely, 423 Mass. 467, 473 n.7 (1996) (collecting cases).  See Albrecht v. Clifford, 436 Mass. 706, 714 (2002).  Given the confusion caused by use of the phrase "inherently unknowable," and our conclusion that it adds nothing substantive to the discovery rule analysis, we counsel that litigants and judges use and apply only the "knew or should have known" language, and not the inherently unknowable formulation, when discussing the discovery rule.
      2.  Application of the discovery rule to defamation cases.   As the District Court judge noted, there are no Massachusetts cases addressing the discovery rule in the context of social media.  Indeed, there are only a limited number of Massachusetts appellate cases considering the discovery rule in any defamation context.[8]  We turn to those cases first as they define helpful principles for proper application of the discovery rule to publications on social media.
      In Flynn, 401 Mass. at 778-782, the plaintiff brought suit in 1986 against the Associated Press and a newspaper over an allegedly defamatory article.  He claimed to be unaware of its existence until 1984, notwithstanding that the article had been published in two newspapers in 1978, after the Associated Press had transmitted it to them.  We affirmed the grant of summary judgment in favor of the defendants, holding that "[t]he discovery rule does not apply to a public libel printed in a newspaper widely available to the public"; we further explained that the news report in question was published in "a newspaper widely available in [the plaintiff's] home town."  Id. at 781.  This position -- that the discovery rule will not affect statutes of limitations in the context of widely published statements in print media -- is accepted in this and many other jurisdictions.  See Harrington, 467 Mass. at 727 n.10 ("many courts do not apply any form of the discovery rule to written statements that are broadly disseminated, as in the case of a newspaper or magazine with a wide circulation").  See, e.g., Shively v. Bozanich, 31 Cal. 4th 1230, 1250 (2003) (collecting cases and noting that "courts uniformly have rejected the application of the discovery rule to libels published in books, magazines, and newspapers"); Mullin v. Washington Free Weekly, Inc., 785 A.2d 296, 299 (D.C. 2001) ("every other court squarely faced with this issue [has rejected] application of the discovery rule in mass media defamation claims").
      More recently, the Appeals Court considered the discovery rule in the context of the Internet in Wolsfelt, 98 Mass. App. Ct. at 327-328.  There, the plaintiff argued that he was defamed by an article published on a local newspaper's website, but he did not bring suit until over three years after its publication.[9]  Id. at 322-323.  On the undisputed facts of the case, the Appeals Court declined to apply the discovery rule (and thus commence the date of the running of the statute of limitations on a date other than the date of publication), because the plaintiff had admitted that (1) the article had been publicly posted on the newspaper's website and (2) "a search engine query with his name produces the article . . . as a result."  Id. at 328.  In such circumstances, the discovery rule does not apply because "a reasonable person in the position of the plaintiff" should have been aware that he or she was harmed by the defendant's article appearing on a publicly accessible and readily searchable newspaper website.  Bowen, 408 Mass. at 208.
      Although these cases provide some guidance, we recognize that material posted to social media platforms complicates the discovery rule analysis.  The specific circumstances of a social media post vary greatly from platform to platform and even from post to post.  See, e.g., Commonwealth v. Carrasquillo, 489 Mass. 107, 108-11 (2022) (explaining how posts can be made, controlled, and accessed on Snapchat); Commonwealth v. Walters, 472 Mass. 680, 688 n.19 (2015), S.C., 479 Mass. 277 (2018) (same for Facebook).  For example, the District Court's question refers to "publicly posted" material, but the meaning of public posting for a social media site appears to require multiple levels of analysis:  Was the "public" post only available to users with an account on the platform, or even a subset of those who had an account on the platform?  How many total users of the platform were there, and how many "subscribed" to the posting page?  Under what circumstances could the post be accessed and shared?  Does the platform provide a means to search for posts, and if so, under what circumstances would the platform's algorithm display the post to users conducting searches on the platform?  Could the post appear in the search results of an Internet search engine?  The answers to such questions and others inform the determination of whether a plaintiff reasonably should have known that he or she was harmed by material posted to social media.  
      We also recognize that our cases have addressed newspaper articles, in print or on the Internet, that identify people by name.  In this case, the plaintiffs claim to be defamed by the use of their image without their name.  Searching for images alone, at least during the relevant time period, appears to be more difficult -- and perhaps much more difficult -- than searching for named parties.  The record before us, however, is underdeveloped on this important point. 
      All of this brings us back to the certified question:  under what circumstances does the discovery rule apply to statutes of limitations for claims premised on social media posts?  We conclude that the proper application of the discovery rule in the social media context requires a fact-intensive, totality of the circumstances analysis to determine what the plaintiff knew or should have known about the social media publication.  This determination must often be left to the trier of fact.  As explained infra, however, courts may decide that the defamatory postings are so widely distributed and readily accessible and searchable that the discovery rule does not apply as a matter of law.
      "Generally, an issue concerning what the plaintiff knew or should have known is a factual question that is appropriate for the trier of fact."  Koe, 450 Mass. at 101.  See Doe v. Creighton, 439 Mass. 281, 283-284 (2003).  Furthermore "our own cases[, unlike those in some other jurisdictions,] show no reluctance to allow a jury to decide factual issues relative to the statute of limitations."  Riley v. Presnell, 409 Mass. 239, 247-248 (1991) (collecting cases showing majority view "that factual disputes concerning when a plaintiff knew or should have known of his cause of action are to be resolved by the jury").  See Patsos v. First Albany Corp., 433 Mass. 323, 329 (2001) (jury question whether limitations defense was precluded by fraudulent concealment); Knight v. Lawrence, 331 Mass. 293, 296-297 (1954) (same for estoppel); Genovesi v. Nelson, 85 Mass. App. Ct. 43, 47 (2014) (for purposes of discovery rule, "the reasonableness of [a plaintiff's] actions in the circumstances is a question of fact that is not appropriately resolved on a motion to dismiss").  Nonetheless, "[w]here a defendant raises the statute of limitations as an affirmative defense, the plaintiff bears the burden of proving the action was timely commenced."  Wolsfelt, 98 Mass. App. Ct. at 324, citing Parr v. Rosenthal, 475 Mass. 368, 376 (2016).  Therefore, "in order for a plaintiff's claim to survive a summary judgment motion, [s]he must demonstrate a reasonable expectation of proving that the claim was timely filed."  Koe, supra.  More specifically, the plaintiff must demonstrate that she had a reasonable expectation of proving that she neither knew nor should have known of the defamatory publication.[10]  See Wolsfelt, supra at 324, 328.
      Although the case law is scant on the question of the application of the discovery rule to social media, two cases from other jurisdictions provide some limited guidance.  Both cases involve Facebook, the social media platform at issue in the instant case, and both speak to the issue of when a court may properly decide as a matter of law that the discovery rule does not apply, so that the publication date, and not any other, defines when the cause of action accrues.[11]
      In Tu Nguyen v. Duy Tu Hoang, 318 F. Supp. 3d 983, 992-994 (S.D. Tex. 2018), a case that the presiding judge described as involving "issues that are particularly significant to the Vietnamese American community," the plaintiff had conducted an investigation into the 1980s murders of Vietnamese journalists (including his father).  After sharing the results of his investigation and subsequently receiving death threats, the plaintiff became aware of allegedly defamatory statements posted to a variety of Internet platforms and initiated suit.  Id. at 993-994.  The defendants moved to dismiss, arguing in part that the suit was not timely under Texas's statute of limitations.  Id. at 1009.  In analyzing a subset of the plaintiff's claims that were based on a certain Facebook post, the court declined to apply the discovery rule to toll the statute of limitations, and granted a motion to dismiss, largely because the post had been shared with at least 1.4 million Facebook users who were followers of the Facebook page of a Vietnamese American political party, which was a defendant in the suit.[12]  See id. at 992, 1012-1013.  Where there is undisputed evidence of the defamatory social media material being so widely distributed, a court may correctly conclude, as a matter of law, that a reasonable person in the plaintiff's position should have known of it.  See Flynn, 401 Mass. at 781-782 (declining to apply discovery rule when there was widespread publicity of issue of public concern in local community); Wolsfelt, 98 Mass. App. Ct. at 328 (same).
      The social media posts in Jones vs. Reekes, Cal. Ct. App., No. F082499 (Feb. 28, 2022), an unpublished decision of the California Court of Appeal, were not spread so widely.  Nonetheless, the specific facts surrounding the posts and the parties led the court to conclude that the discovery rule did not apply.  Id.
      In Jones, the plaintiff's business partner administered a Facebook page, "Eyes on You," that focused on matters of local public interest.  Id.  The plaintiff sued the defendant over posts made to a rival Facebook page ("Eyes on Ewe"), but his suit was untimely.  Id.  The court rejected the plaintiff's attempt to invoke the discovery rule.  In the court's view, the plaintiff should have been aware of the allegedly defamatory posts within the limitations period because (1) although the defendant blocked the plaintiff's account from viewing the offending posts, they were otherwise available to the public and the block was easily circumventable; and (2) the plaintiff had a long history of disagreements with the defendant, which had previously played out on other Facebook pages.  Id.  Thus, the plaintiff "not only had access to the statements (by using the technical work-arounds available to circumvent [the defendant's] blockage) but also 'cause to seek access,' that is, a reason to suspect wrongdoing on the part of [the defendant]."  Id., quoting Shively, 31 Cal. 4th at 1249.  Although in reaching this conclusion the court applied the particulars of California law, we nevertheless believe that the court's general approach -- a fact-intensive inquiry examining the specific characteristics of the social media posts in question, their availability to someone in the plaintiff's position, and the past relationship between the parties involving previous disputes on the same social media platform -- is appropriate for cases involving social media and the discovery rule.
      With these guiding principles we turn briefly to the incomplete record before us, to provide some further instruction on the application of the discovery rule to social media postings.  That record contains some limited amount of relevant, or potentially relevant, evidence informing the analysis of whether the plaintiffs knew or should have known about the posted photographs.  Critically, the record before us appears incomplete regarding when the plaintiffs actually learned of the postings.  While, as discussed, the record contains an affidavit from a paralegal suggesting that the posts were discovered through the paralegal's Facebook searches, the affidavit does not state with particularity when the posts at issue were discovered.  And, elsewhere, the record suggests that none of the plaintiffs can recall exactly how or when they first discovered the existence of these posts by the defendant.  Further development of their answers to that question may obviously be determinative if they learned of the postings more than three years prior to commencing suit.
      If the plaintiffs did not actually know of the postings more than three years prior to commencing suit, the court would then still have to address whether they reasonably should have known of the postings within that period to determine whether the discovery rule applies.  As explained above, a court should consider how widespread the publications were on social media and their accessibility and searchability.  In evaluating how widespread the distribution was, a relevant consideration is the fact that the photographs were published on the defendant's adult entertainment club page on Facebook, a platform that apparently had over one billion users in 2013.  See Smith, Business Insider, Facebook Users Are Uploading 350 Million New Photos Each Day (Sept. 18, 2013), https://www.businessinsider
.com/facebook-350-million-photos-each-day-2013-9 [https://perma
.cc/Y999-PMF5].  We do not, however, know from this record how many people actually viewed the adult entertainment club's Facebook page.  Based on the number of "likes," that number may have been quite small.  That is also a relevant consideration.
      In terms of accessibility and searchability, it is relevant that the publications were not kept secret or confidential, as the postings were used to publicize the adult entertainment venue.[13]  See Wolsfelt, 98 Mass. App. Ct. at 328.  Nonetheless, the social media universe is, as the District Court judge recognized, "vast"; a Facebook white paper reported that 350 million photographs per day were being added to Facebook in 2013.  Smith, supra.  The paralegal's affidavit also asserts that Facebook images were not searchable at the time, and the models were not identified by name.  She also avers that there are approximately 4,000 adult entertainment venues and 70,000 night clubs to investigate, making the discovery of such misappropriation enormously time consuming.  At the same time, our limited record also contains both an article from the New York Times and a news release from Facebook itself, each stating that facial recognition technology that facilitated (or even automated) such searching had been in place at Facebook for a decade, before being discontinued in 2021.  It is unclear if any evidence of this technology is part of the summary judgment record, but whether such technology could have been used by the plaintiffs in this case to identify these images, and if so, how long it would take them to do so, are other undeveloped facts that may be relevant to the determination whether the discovery rule applies to the social media postings.
      Also potentially relevant is evidence suggesting that the plaintiffs, who license their images as part of their profession, understood that some people were misappropriating those images.  Each brought at least one lawsuit over such misappropriation within three years of the postings at issue in this case, and with the exception of one plaintiff who has only brought seven, each has brought dozens of such lawsuits since 2015.  Although all the details are not available in the record before us, such evidence may be relevant to what constitutes reasonable diligence for someone "in the position of the plaintiff."  Bowen, 408 Mass. at 208.  See Jones, Cal. Ct. App., No. F082499 (past conflicts between parties on same platform tended to show plaintiff should have known about defamatory statements).  Cf. Saul Zaentz Co. v. Wozniak Travel, Inc., 627 F. Supp. 2d 1096, 1111-1112 (N.D. Cal. 2008) (although trademark holder "not required to constantly monitor every nook and cranny of the entire nation," reasonable plaintiff would have investigated further "when confronted with successive search reports disclosing potentially infringing uses" [citation omitted]).
      In evaluating when the misappropriation of the images should have been discovered by the plaintiffs, another relevant consideration may be record evidence that the plaintiffs' images are widely distributed by the plaintiffs themselves and that they have enormous social media followings.  According to the plaintiffs' complaint, for example, one plaintiff has "more than two million fans between Facebook, Instagram and Twitter."  The difficulty of separating out authorized and unauthorized use of the images, with so many images and so many followers, appears to be a relevant consideration based on the limited record before us.  Our identification of these issues and this record evidence is, however, by no means meant to be exclusive or comprehensive of the inquiry required to determine the applicability of the discovery rule to these social media postings. 
      In sum, in order to determine whether the plaintiffs knew or should have known of the defamatory postings of their images on social media, and thus the applicability of the discovery rule, it is necessary to consider the totality of the circumstances regarding such postings, including the extent of their public distribution, and the accessibility and searchability of the social media platform upon which they appeared.  Whether the ultimate question can be resolved as a matter of law or must be decided by a jury we leave to the District Court, with the benefit of the full record before it.[14]
      Conclusion.  Our answer to the certified question is as follows.  Claims for defamation, violation of the right to privacy, violation of the right of publicity, and related claims that arise from material posted to social media platforms accrue when a plaintiff knows, or reasonably should know, that he or she has been harmed by the defendant's publication of that material.  Given how vast the social media universe is on the Internet, and how access to, and the ability to search for, social media posts may vary from platform to platform and even from post to post, that determination requires consideration of the totality of the circumstances regarding the social media posting, including the extent of its distribution, and the accessibility and searchability of the posting.  The application of the discovery rule is therefore a highly fact-specific inquiry, and the determination of whether plaintiffs knew or should have known that they were harmed by a defendant's post on social media must often be left to the finder of fact.  If, however, the material posted to social media is widely distributed, and readily accessible and searchable, a judge may determine as a matter of law that the discovery rule cannot be applied.   
      The Reporter of Decisions is to furnish attested copies of this opinion to the clerk of this court.  The clerk, in turn, will transmit one copy under the seal of this court to the clerk of the United States District Court for the District of Massachusetts, in answer to the question certified, and will also transmit a copy to each party.
footnotes

          [1] Mariana Davalos; Jamie Jeanelle Middleton, doing business as Jamie Eason; Joanna Krupa; Marta Krupa; and Paola Cañas.
          [2] Doing business as Club Alex's Adult Entertainment. 
          [3] See Davalos vs. Baywatch Inc., U.S. Dist. Ct., No. 21-11075-NMG, slip op. at 8 (D. Mass. Dec. 8, 2023) (District Court's initial order granting partial summary judgment, vacated on reconsideration to instead certify question to this court, describing Internet as "vast sea" of information).  See also Smith, Business Insider, Facebook Users Are Uploading 350 Million New Photos Each Day (Sept. 18, 2013), https://www
.businessinsider.com/facebook-350-million-photos-each-day-2013-9 [https://perma.cc/Y999-PMF5] ("Facebook revealed in a white paper that its users have uploaded more than 250 billion photos, and are uploading 350 million new photos each day"). 
          [4] The first of these suits were filed in 2015 or 2016, depending on the plaintiff.  The specific number of such lawsuits filed by each of the six individual plaintiffs is as follows:  7, 34, 37, 76, 81, and 130.
          [5] According to the affidavit, these include "approximately 4,000 so-called Gentlemen's Clubs throughout the United States" and "70,000 night clubs."  She also mentioned searching sites operated by dentists and plastic surgeons.
          [6] Citing a New York Times article and news release by Facebook, the defendant argues that from 2010 to 2021 Facebook offered a facial recognition feature that could have alerted the plaintiffs any time that their image was posted to Facebook.  The plaintiffs dispute that this information is part of the summary judgment record (a claim we cannot assess).  They also dispute that this technology would have been applicable to the defendant's posts at all.  Based on the record before us, we lack the information necessary to evaluate the feature's capacity to identify the images at issue in this case during the relevant time period and, if such capacity existed, how long it would have taken the plaintiffs to make such identifications.  
          [7] The certified question also inquires about claims for violations of the right of publicity and right to privacy, see G. L. c. 214, §§ 1B, 3A, and "related tort claims."  To the extent such claims are premised on publication on social media, we see no reason to treat the discovery rule analysis differently from that for defamation claims.  See Flynn, 401 Mass. at 782 (where claims for libel, emotional distress, invasion of privacy, and violation of civil rights were predicated on publication of article, discovery rule analysis as to libel claim was applicable to all claims); Hendrickson, 365 Mass. at 85 (limitations analysis "should apply equally to similar facts regardless of the form of [the] proceeding").  Accord Jacobs vs. Journal Publ. Co., U.S. Dist. Ct., No. 1:21-CV-00690-MV-SCY (D.N.M. May 17, 2022) (same discovery rule analysis applied to both defamation and invasion of privacy claims based on publication of online news article). 
          [8] We note that some other jurisdictions do not apply the discovery rule to defamation cases at all.  See, e.g., Bass v. E.I. DuPont de Nemours & Co., 28 Fed. Appx. 201, 206 (4th Cir.), cert. denied, 536 U.S. 972 (2002) (defamation not among claims enumerated by Virginia discovery rule statute); Birtha v. Stonemor, N.C., LLC, 220 N.C. App. 286, 293 (2012) (no discovery rule unless "bodily harm or physical damage").  Others limit its application in ways that we have not.  See, e.g., Clark v. AiResearch Mfg. Co., 138 Ariz. 240, 243 (Ct. App. 1983) (discovery rule applies only if defamatory statement made in "inherently secretive or confidential" manner); Arthaud v. Fuglie, 2023 ND 36, ¶¶ 5, 7 (under State statute, discovery rule does not apply to any defamatory material posted on Internet).  
          [9] Also at issue was a second allegedly defamatory article, which the court decided was protected by the fair report privilege.  See Wolsfelt, 98 Mass. App. Ct. at 330-331.
          [10] Where the material facts are undisputed, or the pleadings are deficient on their face, the issue should of course be decided on summary judgment or a motion to dismiss. Unnecessarily delaying resolution to trial of the issue of when the plaintiff knew or should have known of the defamatory publication has the potential to waste time and resources.
          [11] We do note, however, that both cases involved defamatory statements about plaintiffs identified by name and not defamatory images without names.
          [12] The court also declined to apply the discovery rule to other Facebook posts that were less broadly distributed, although it did not provide the factual basis for its conclusion in any detail.  See Tu Nguyen, 318 F. Supp. 3d at 1013.  In our view, the mere fact that material was posted to a social media platform, without more, is not sufficient to establish as a matter of law that a plaintiff should have known of it.  Accord Lopez vs. Conchetta, Inc., U.S. Dist, Ct., No. CV 23-5030 (E.D. Pa. May 21, 2024) (denying motion to dismiss on limitation grounds because allegedly defamatory social media posts were distinguishable from "mass media publications" that normally preclude Pennsylvania discovery rule).  Cf. Wolsfelt, 98 Mass. App. Ct. at 328. 
          [13] Though, again, the actual reach of the posts is not fully developed in the record before us.
          [14] Prior to the order certifying this question and staying proceedings, this case was set for trial before a jury.